532 A.2d 441

**Gerald W. VERNON and Nancy Vernon, his wife**

v.

**George STASH and Sharon Stash**

v.

**CASTRIOTA CHEVROLET and General Motors Corporation (Two Cases).**

**Appeal of GENERAL MOTORS CORPORATION.**

**Appeal of CASTRIOTA CHEVROLET.**

Superior Court of Pennsylvania.

Argued May 12, 1987.

Filed Oct. 5, 1987.

38

40

William A. Pietragallo, Pittsburgh, for General Motors, appellant (at 1145) and appellee (at 1195 and 1226).

Arthur J. Murphy, Jr., Pittsburgh, for Castriota, appellant (at 1195 and 1226) and appellee (at 1145).

Paul L. Hammer and Edgar M. Snyder, Pittsburgh, for Vernon, appellees.

Herman C. Kimpel, Pittsburgh, for Stash, appellees.

Before WIEAND, KELLY and POPOVICH, JJ.

WIEAND, Judge:

Gerald Vernon was injured by a driverless 1982 Chevrolet Cavalier which rolled down a hill and careened into a dwelling house where he was a guest. Sharon Stash was the owner of the Chevrolet; her father, George Stash, had parked the car; Castriota Chevrolet (Castriota) had sold the car; and General Motors Corporation (GM) had manufactured the vehicle. In an action by Vernon to recover damages, the jury found that the Chevrolet had been defective and that Castriota and George Stash had been negligent. The jury found further, however, that the only substantial factor in causing the accident had been the defective condition of the vehicle. The jury awarded damages to Vernon in the amount of $178,000.00 and to his wife for loss of consortium in the amount of $6,000.00. The trial court molded the verdicts to add damages for delay and held that Castriota was entitled to indemnification from GM. Both Castriota and GM appealed.

The essential facts are as follows. On September 17, 1981, Sharon Stash purchased a new, 1982 Chevrolet Cavalier from Castriota Chevrolet. Within a week she had re-

turned the vehicle to Castriota's service department with a complaint that it would "jump" out of gear. Although mechanics employed by Castriota adjusted the car's linkage, Stash continued to experience difficulties with the automobile's transmission. On October 13, 1981, Stash again returned the Cavalier to Castriota. To remedy the problem, Castriota this time removed the car's transmission, replaced the gears and synchronizer, and installed various other parts. Several weeks later, Stash drove the automobile to a local restaurant, parked the car in first gear, applied the hand brake, and went inside. Fifteen minutes later, she learned that the car had drifted out of the parking lot of the restaurant and had rolled into an adjoining street.

On December 30, 1981, Sharon's father, George Stash, drove the car to work. When he returned home, he parked the car on the hill in front of his residence. The manual gear shift, according to his testimony, had been placed in second gear, and the emergency hand brake had been set. Later that evening, he was informed that the vehicle had rolled down the hill and had crashed into a neighbor's residence where it injured Gerald Vernon. A police officer who inspected the automobile at the scene of the accident found the gear shift in the neutral position and the parking brake fully set. With the hand brake still engaged, the vehicle was extricated from the house by a tow truck. When the winch of the tow truck was removed, the Stash vehicle again rolled away. It was stopped only after a bystander entered the vehicle and applied the foot brake.

The case was submitted to the jury on special interrogatories. Those interrogatories and the jury's responses thereto were as follows:

TO THE JURY:

Based upon the preponderance of the evidence, answer the following Interrogatories which have been propounded to you pursuant to the Pennsylvania Rules of Civil Procedure:

SECTION A:

1. Was defendant George Stash negligent in the operation and parking of the involved Chevrolet Cavalier automobile on December 30, 1981?

YES X

NO ___

2. If so, was his negligence a substantial factor in bringing about the harm to the plaintiffs?

YES ___

NO X

SECTION B:

1. Was defendant Sharon Stash negligent in the operation and ownership of the involved 1982 Chevrolet Cavalier automobile?

YES ___

NO X

2. If so, was her negligence a substantial factor in bringing about the harm to the plaintiffs?

YES ___

NO X

SECTION C:

1. Was Castriota Chevrolet negligent in failing to detect any defect in the design or manufacture of the subject Chevrolet Cavalier automobile?

YES X

NO ___

2. If so, was such conduct of Castriota Chevrolet a substantial factor in bringing about the harm to the plaintiffs?

YES ___

NO X

SECTION D:

1. Was the conduct of Castriota Chevrolet negligent in performance of repairs to the subject Chevrolet Cavalier automobile prior to December 30, 1981?

YES X

NO ___

2. If so, was such conduct by Castriota Chevrolet a substantial factor in bringing about any harm to the plaintiffs?

 YES ___

 NO X

SECTION E:

1. Was the 1982 Chevrolet Cavalier automobile defective in design or manufacture?

 YES X

 NO ___

2. If so, was that defect a substantial factor in bringing about the harm to the plaintiffs?

 YES X

 NO ___

If you have answered "YES" to both questions under Section A, or Section B, or Section C, or Section D, or Section E, enter the amount of damages you award to plaintiffs.

 GERALD W. VERNON $178,000.00

 NANCY VERNON $ 6,000.00

The trial court, based on the jury's answers to special interrogatories, entered a verdict against GM only. On October 16, 1985, five days after the verdict, Castriota filed a motion to mold the verdict so that it would reflect the liabilities of both dealer and manufacturer and award indemnification to the dealer. On October 18, 1985, GM filed post-trial motions. Castriota did not file post-trial motions. However, it did file a response to GM's post-trial motions in which it opposed any suggestion by GM that Castriota had been independently negligent in causing the accident.

Vernon also motioned the trial court to mold the verdict against dealer and manufacturer and requested that, in the absence of post-trial motions, judgment be entered thereon against Castriota. This motion was allowed. Subsequently, however, the trial court vacated the judgment and allowed Castriota to file post-trial motions nunc pro tunc. The post-trial motions of Castriota and GM were denied by

the trial court on July 7, 1986, and at the same time Castriota's request for indemnification against GM was granted.

On July 22, 1986, in accordance with an agreement which had been entered pre-trial, judgment was entered in favor of Sharon Stash and against Castriota in the amount of $5,800.00 for property damage sustained by the Stash vehicle in the accident. The next day, the verdict in favor of the Vernons was molded to add delay damages and was amended to impose liability against both GM and Castriota. Following the entry of judgments against both defendants on August 6, 1986, GM appealed. Subsequently, on August 21, 1986, Castriota filed a notice of appeal from the judgment entered on July 22, 1986. An additional appeal was later taken by Castriota from the judgment of August 6, 1986.[1]

GM raises five issues on appeal as follows: (1) was George Stash's negligence in failing to turn the wheels of the vehicle toward the curb when parking it on a hill a substantial factor as a matter of law; (2) did the trial court err by allowing evidence of other instances of defective performance by the vehicle; (3) did the trial court commit error by allowing a defense expert, Jo E. Davidson, to testify concerning design of the parking brake and transmission; (4) did the trial court erroneously instruct the jury regarding the burden of proving defective manufacture; and (5) did the trial court err by instructing the jury on liability for failure to warn. Castriota adopts without discussion these five arguments advanced by GM. It also argues (1) that it is entitled to indemnification from GM and (2) that if a new trial is granted, there is no need to relitigate the issue of Castriota's independent negligence.

■ Castriota's first appeal was taken from the judgment of July 22, 1986, which was for property damage caused to

---

1. Castriota also purported to appeal from the July 7, 1986 order denying its post-trial motions. It is clear, however, that orders dismissing post-trial motions following jury trials are interlocutory and non-appealable until entry of final judgment. *Murray v. Abcon, Inc.,* 291 Pa.Super. 428, 429, 435 A.2d 1301, 1302 (1981).

Sharon Stash's vehicle. Nowhere in Castriota's brief to this Court, however, does the dealer contend either directly or by reference that the award of property damage to Sharon Stash was in any way erroneous. This issue, therefore, has been waived. The judgment of July 22, 1986 will be affirmed.

It may also be observed that GM has not contended that it was error for the trial court to require it to indemnify Castriota. That issue, therefore, is not properly before this Court for review.

Section 3701 of the Motor Vehicle Code provides:

**(a) General rule.**—No person driving or in charge of a motor vehicle shall permit the vehicle to stand unattended without placing the gear shift lever in a position which under the circumstances impedes the movement of the vehicle, stopping the engine, locking the ignition in vehicles so equipped, removing the key from the ignition and, when standing upon any grade, turning the front wheels to the curb or side of the highway and effectively setting the brake.

75 Pa.C.S.A. § 3701(a). GM contended at trial that George Stash had violated this provision of the Vehicle Code when he parked the Cavalier automobile on the hill without turning the wheels of the vehicle toward the curb. By breaching this statutory duty, GM argued, Stash had been negligent per se. The jury which heard the evidence determined that Stash had been negligent in fact, but found that his negligence had not been a substantial factor in causing the accident. In support of its motion for judgment n.o.v. against Stash, GM argued that the jury's finding of no causation had been erroneous as a matter of law. The trial court disagreed and denied GM's motion for judgment n.o.v. GM maintains that this was error.

In reviewing a denial of a motion for judgment n.o.v., the evidence and all reasonable inferences therefrom must be considered in the light most favorable to the verdict winner. A judgment n.o.v. should be entered only

in clear cases, and all doubt should be resolved in favor of the verdict winner.

*Maravich v. Aetna Life & Casualty Co.*, 350 Pa.Super. 392, 396, 504 A.2d 896, 898 (1986), quoting *Kearns v. Clark*, 343 Pa.Super. 30, 34–35, 493 A.2d 1358, 1360 (1985).

 Violation of a statute, although negligence per se, does not constitute a ground for imposing liability unless it is shown to be a substantial factor in causing the injury. See: *Kaplan v. Philadelphia Transportation Co.*, 404 Pa. 147, 149–50, 171 A.2d 166, 167 (1961); *Crane v. Neal*, 389 Pa. 329, 335, 132 A.2d 675, 678–79 (1957), *overruled on other grounds, McCay v. Philadelphia Electric Co.*, 447 Pa. 490, 291 A.2d 759 (1972); *Skowronski v. Bailey*, 330 Pa.Super. 83, 88 n. 3, 478 A.2d 1362, 1365 n. 3 (1984). Whether a party's conduct has been a substantial factor in causing injury to another is ordinarily a question of fact for the jury, and may be removed from the jury's consideration only where it is so clear that reasonable minds cannot differ on the issue. See: *Hamil v. Bashline*, 481 Pa. 256, 266, 392 A.2d 1280, 1284–85 (1978); *Ford v. Jeffries*, 474 Pa. 588, 595, 379 A.2d 111, 114 (1977). See also: 57 Am.Jur.2d *Negligence* § 261, at 648.

 There is no dispute in the instant case that on the evening of the accident, George Stash failed to park the subject automobile with the wheels turned toward the curb as required by Section 3701 of the Vehicle Code. However, there was evidence that the adjacent curb was not square but sloped, and Stash contended that it was insufficient to prevent a disengaged, brakeless automobile from rolling down the hill. Because of this feature, it appears that reasonable minds could differ regarding whether the manner in which Stash parked the vehicle was a substantial factor in causing the accident. See: *DeMaine v. Brillhart*, 224 Pa.Super. 241, 303 A.2d 506 (1973). Consequently, a jury could have found, as it apparently did, that the real causes of the run-away vehicle were the defective brakes and transmission.

■ Evidence of prior accidents or occurrences is generally relevant to show the existence of a defect or dangerous condition or to demonstrate knowledge on the part of the defendant that the hazard existed. See: *McCormick on Evidence* § 200 (3d ed. 1984). See also: *Stormer v. Alberts Construction Co.*, 401 Pa. 461, 466, 165 A.2d 87, 89 (1960); *Yoffee v. Pennsylvania Power and Light Co.*, 385 Pa. 520, 542, 123 A.2d 636, 648–49 (1956); *Whitman v. Riddell*, 324 Pa.Super. 177, 180–81, 471 A.2d 521, 523 (1984). For such evidence to be admissible, however, the prior incidents must have taken place under the same or similar circumstances. See: *Stormer v. Alberts Construction Co., supra; Whitman v. Riddell, supra.*

■ In the instant case, Sharon Stash was permitted to testify, over objection, that shortly after purchasing the 1982 Cavalier, she noticed that it would "jump" out of fourth gear. After taking the vehicle to Castriota for repairs, she stated, it continued to jump out of fourth gear and would, on occasion, slip out of other gears as well. According to Stash, the problem with the transmission persisted even after the car had been repaired a second time by Castriota. Stash was also allowed to testify concerning a prior incident in which her parked automobile had drifted down a slight grade on a parking lot and had rolled onto an adjoining street. On that occasion, she recalled, she had parked the car in first gear and had applied the hand brake firmly. When she had returned to her car, she had discovered the gear shift in the neutral position. The trial court admitted Stash's testimony of prior occurrences on the ground that it constituted circumstantial evidence that the car had been defective when it left the manufacturer and was sold by the distributor.

The trial court's evidentiary ruling was neither erroneous nor an abuse of discretion. It was the contention of the owner and driver of the vehicle at trial that both the transmission and hand brake had been defective when the Chevrolet had been sold. The evidence was relevant, therefore, to show that on prior occasions following its sale, the

car had slipped out of gear, and the hand brake, although engaged, had been inadequate to prevent the vehicle from rolling away.

The trial court instructed the jury as follows:

George and Sharon Stash may prove their case of strict liability against General Motors and Castriota Chevrolet by merely showing the occurrence of a malfunction of the automobile during normal use. They need not prove the existence of a specific defect in that automobile.

... The occurrence of a malfunction within a short time after delivery of the automobile permits an inference that the defect existed at the time of the sale.

. . . .

So again, this is somewhat repetitious. The Plaintiffs are not required to prove any specific defect. The mere fact that the car may have not worked properly is evidence that there was some defect.

N.T. at 870, 871.

Appellants contend that these instructions were erroneous. They contend that the instruction should not have been given, and they complain that the jury was not told that those who sought to prove a defective product had the burden of proving the absence of abnormal uses and of negating reasonable secondary causes.

 To make out a cause of action for strict products liability, the plaintiff must prove that the offending product was defective and that the defect in the product was a substantial factor in causing his or her injuries. See: *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 93–94, 337 A.2d 893, 898 (1975); *Foley v. Clark Equipment Co.*, 361 Pa.Super. 599, 605–06, 523 A.2d 379, 382 (1987). In *MacDougall v. Ford Motor Co.*, 214 Pa.Super. 384, 257 A.2d 676 (1969), we held that a plaintiff need not actually prove a specific defect to prevail; proof of the occurrence of a mechanical malfunction, in the absence of abnormal use or reasonable secondary causes, will ordinarily provide sufficient evidence of defectiveness to sustain a claim under the

Restatement (Second) of Torts § 402A. See also: *Thompson v. Anthony Crane Rental, Inc.*, 325 Pa.Super. 386, 394, 473 A.2d 120, 125 (1984); *Lenkiewicz v. Lange*, 242 Pa.Super. 87, 91, 363 A.2d 1172, 1175 (1976).

 The failure of the trial court to instruct the jury regarding the burden of excluding abnormal uses and secondary causes has been waived. To preserve specific portions of a trial court's jury instructions for appellate review, the complaining party or parties must either submit a specific request or make a timely, specific objection to the charge as given. *Broxie v. Household Finance Co.*, 472 Pa. 373, 377, 372 A.2d 741, 743 (1977). An assignment of error that the trial court failed to give a specific instruction will not be considered unless it affirmatively appears from the record that a request for such an instruction was made, that it was denied by the trial court, and that an appropriate objection was taken to the action of the court. 4A C.J.S. *Appeal & Error* §§ 715, 1179. Objections not appearing in the record may not be considered on appeal. See: *McCaffrey v. Pittsburgh Athletic Association*, 448 Pa. 151, 162, 293 A.2d 51, 57 (1972); *Society Hill Tower Owners Association v. Matthew*, 306 Pa.Super. 13, 18 n. 3, 451 A.2d 1366, 1369 n. 3 (1982).

Instantly, the malfunction of the vehicle as evidence of a defect was raised in written points for charge submitted by the Stashes and Vernons. These requested instructions were accepted by the trial court and were recited almost verbatim to the jury during the charge of the court. Nowhere in the record does it appear that GM objected to the proposed points for charge. The record reveals only that after the conclusion of the court's instructions, counsel for GM raised a general exception to the adequacy of the malfunction charge, stating "I reiterate my exception to . . . the manner in which the Mc Dugle [sic] charge was delivered because I don't think it was whole." This was inadequate to call to the attention of the trial court the inadequacy which appellant now asserts. See: *Se–Ling Hosiery, Inc. v. Margulies*, 364 Pa. 45, 70 A.2d 854 (1950); *Dupont*

*v. Gallagher,* 360 Pa. 419, 62 A.2d 28 (1948). See also: Pa.R.C.P. 302(b); 16 Std.Pa.Prac.2d § 87:32.

Moreover, the trial court's instruction was not erroneous. It permitted the jury to infer a defective product from a malfunction, not from the occurrence of the accident. This was a correct instruction. Inasmuch as there was no evidence of abnormal use or a secondary cause for the malfunction, if such occurred, the trial court did not err when it failed to instruct the jury that appellee had the burden of proving the absence of such abnormal use or secondary cause.

As with the trial court's charge on the theory of mechanical malfunction, the record fails to reveal any objection by GM to the court's instruction regarding the manufacturer's duty to give adequate warning of dangerous conditions. Failing a proper, specific objection, GM waived the right to challenge this instruction. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). Moreover and in any event, the issue of inadequate warnings was not submitted to the jury in special interrogatories; and, therefore, the trial court's inclusion of an instruction regarding the failure of the manufacturer to warn of a defective product could not have had an effect upon the jury's verdict. Thus, even if GM's objection to the charge had been properly preserved, a new trial would not be warranted.

" 'It is well-settled that the admission of expert testimony is a matter within the sound discretion of the trial court, whose decision thereon will not be reversed unless the court clearly abused that discretion.' " *Pascone v. Thomas Jefferson University,* 357 Pa.Super. 524, 529, 516 A.2d 384, 386–87 (1986), quoting *Pirches v. General Accident Insurance Co.,* 354 Pa.Super. 303, 307, 511 A.2d 1349, 1351 (1986). It is GM's contention that the trial court in the present case abused its discretion when it admitted the expert testimony of Jo E. Davidson. Specifically, the manufacturer argues that because Davidson possessed no training in the fields of automotive design, biomechanics, and

ergonomics, he was incompetent to render an expert opinion concerning the awkwardness of the hand brake and the false detente of the gear shift.[2] Regardless of Davidson's competence, GM asserts further, his opinions should not have been admitted because they were based on assumed facts which were not a part of the record. We find no merit in either of these contentions.

We note initially that no objection was made by GM to Davidson's testimony that the gear shift of Stash's automobile possessed a "false detente." Thus, GM may not now challenge the competency of the witness to express that opinion. A specific objection was raised by GM, however, when Davidson was asked on direct examination whether the hand brake was difficult to apply. The trial court denied this objection and permitted Davidson to testify that in his opinion the brake lever had been placed in an awkward position which made it difficult to engage fully.

"An expert witness has been defined as a person who possesses knowledge not within the ordinary reach and who, because of this knowledge is specially qualified to speak upon a particular subject." *Erschen v. Pennsylvania Independent Oil Co.*, 259 Pa.Super. 474, 477, 393 A.2d 924, 926 (1978). "The Pennsylvania standard of qualification for an expert witness is a liberal one. 'If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given his evidence is for the jury.'" *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 598, 437 A.2d 1198, 1201 (1981), quoting *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 338, 319 A.2d 914, 924 (1974).

Instantly, Davidson testified concerning his qualifications as follows: he had obtained a Bachelor of Science degree in industrial vocational education with automobile mechanics as his major; he had participated in a number of field service and other training courses involving various

---

**2.** This was an alternate theory advanced by appellees for imposing liability upon the manufacturer.

aspects of automotive mechanics, including the Wagner Brake Clinic and a brake colloquium sponsored by the Society of Automotive Engineers; he was a certified master automobile technician and had been employed full time as a journeyman mechanic for eleven and one-half years; and he was then self-employed as a consultant in forensic automobile mechanics, specializing in investigations of automobile accidents involving mechanical failures. Given Davidson's educational background in automotive mechanics and particularly his experience with braking systems, it was not unreasonable for the trial court to conclude that Davidson possessed at least a reasonable pretension to specialized knowledge regarding the proper adjustment and positioning of hand brake levers. Under the liberal standard for admitting expert testimony in Pennsylvania, we perceive no abuse of discretion in the trial court's determination that Davidson was qualified to express his opinion on this subject. See: *Griffith v. Clearfield Truck Rentals, Inc.*, 427 Pa. 30, 233 A.2d 896 (1967).

■ "To endow opinion evidence with probative value it must be based on facts proven or assumed, sufficient to enable the expert to form an intelligent opinion." *Collins v. Hand*, 431 Pa. 378, 380, 246 A.2d 398, 404 (1968), quoting *Dreher v. Order of United Commercial Travelers of America*, 173 Wis. 173, 179, 180 N.W. 815, 817 (1921). See: *Murray v. Siegal*, 413 Pa. 23, 29, 195 A.2d 790, 793 (1963); *Reliance Universal, Inc. of Ohio v. Ernest Renda Contracting Co.*, 308 Pa.Super. 98, 103, 454 A.2d 39, 42 (1982). The facts assumed by an expert need not be conclusively proven; it is sufficient if the evidence of record tends to establish those assumptions. See: *Battistone v. Benedetti*, 385 Pa. 163, 169–170, 122 A.2d 536, 539 (1956); *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Super. 230, 239, 433 A.2d 40, 45 (1981).

■ In the case sub judice, Davidson expressed the opinion that if the automobile's hand brake had been fully applied on the evening of the accident the car would not have rolled down the hill. GM contends that this was

improper because the evidence was that the hand brake had been fully applied. The question asked of the witness was not the usual hypothetical question. That the car rolled down the hill was established beyond contradiction. The expert's testimony, even if if did contradict the testimony of the driver, was not thereby rendered inadmissible. It suggested only that the driver may have been mistaken or, in the alternative, that the brake had not been fully engaged. This possibility existed even according to the driver's testimony. He testified that he had pulled the brake as firmly as he could with his right arm but conceded that the brake could have been set more firmly if he had used both hands. Moreover, to the extent that Davidson's testimony tended to show that the brake had not been fully set, it is difficult to perceive harm thereby to GM. In such event, the testimony tended to show that the driver had been careless in parking the car on a hill.

■ Davidson was also permitted to testify that if the automobile had been parked in second gear, as George Stash testified, the car would not have rolled down the hill. The fact that it did so, Davidson opined, suggested that even though the car appeared to be in gear when Stash parked it on the hill, it actually had been left in the neutral position. The "false detente" in the transmission, Davidson concluded, constituted a defective condition which contributed to the accident. Contrary to GM's contention, this testimony was not without evidentiary support. Although it was Stash's testimony that the transmission had been fully engaged in second gear on the night of the accident, there was uncontradicted evidence that following the misadventure, the vehicle's gear shift appeared in the neutral position. This evidence was sufficient to support Davidson's assumption that the car had not, in fact, been in gear at the time it began its calamitous trek down Copsewood Drive.

Judgments affirmed.