624 A.2d 114

William H. URBAN, Jr., Appellee

v.

RADICE CORPORATION, a corporation; Radice Office Building One, Inc., a corporation; and Radice Management of Pennsylvania Corporation; a corporation

v.

Robert COLOSIMO d/b/a Public Parking of Pittsburgh Company, Appellant.

William H. URBAN, Jr., Appellee

v.

RADICE CORPORATION, a corporation; Radice Office Building One, Inc., a corporation; and Radice Management of Pennsylvania Corporation, a corporation

v.

Robert COLOSIMO d/b/a Public Parking of Pittsburgh Co., Appellee.

Appeal of RADICE MANAGEMENT OF PENNSYLVANIA CORPORATION.

Superior Court of Pennsylvania.

Argued July 29, 1992.

Filed March 8, 1993.

Reargument Denied May 19, 1993.

Before JOHNSON, Judge.

Dara A. Decourcy, Pittsburgh, for Colosimo.

Herbert N. Rosenberg, Pittsburgh, for Urban.

Lynette Norton, Pittsburgh, for Radice Management.

Before TAMILIA, HUDOCK and HESTER, JJ.

PER CURIAM:

Judgment vacated. The matter is remanded for new trial. Jurisdiction relinquished.

Concurring and dissenting opinion by HESTER, J.

HESTER, Judge, concurring and dissenting.

I must respectfully dissent from the conclusion of my esteemed colleague that a new trial is warranted in this case. The majority has authored a well written adjudication, I believe, however, that the trial court did not abuse the wide discretion accorded it under our case law when it determined that the evidence of the prior accident was admissible.

The evidence produced by Mr. Urban is as follows. On December 7, 1984, Mr. Urban slipped in a parking lot which had been covered with an accumulation of snow and ice for several days. He now suffers serious and permanent injuries. Appellee, who was forty years old at the time of the accident, worked for AT & T his entire life. In spring, 1983, his office location was moved to a building owned by Radice Management of Pennsylvania ("Radice"). Mr. Urban regularly parked his automobile, a 1976 Mark IV Lincoln Continental that he kept in perfect condition, in the back portion of the rear lot to protect it from getting hit. At the time of Mr. Urban's accident, Robert Colosimo, d/b/a Public Parking of Pittsburgh Company ("Colosimo") was under contract with Radice to clear snow from the parking lot.

The record is replete with evidence, including admissions of employees of Radice, that Colosimo was dismally negligent in fulfilling this contractual obligation, that Radice continually was informed of this default, and that Radice did nothing to correct the situation. When Mr. Urban started to work at the

building site in 1983, it snowed several times. Mr. Urban complained to Dan Thomas and Les Ransom, Radice personnel involved in the management of the building, that the snow was not removed from the parking lot. Mr. Urban testified that all four parking lots which serviced the building were icy and hazardous every time there was below freezing precipitation. Most significant was Mr. Urban's testimony that each time it snowed, the condition of the parking lot was very bad, that it was not "any different" from the day he fell, and that "all" of the parking lots servicing the building were in the same condition. Reproduced Record ("R.R.") at 520a. Mr. Urban complained both to Thomas and Ransom and to his own manager about the lack of maintenance on the parking areas.

Mr. Urban's testimony was supported by other witnesses. Joyce Imhoff, an AT & T employee who worked at the Radice building location since November, 1983, confirmed Mr. Urban's testimony that there was no maintenance of any parking lots when it snowed. There were never any snow plows operating or salt being applied on the lots. She also complained to her managers about the condition of the parking lots. She stated that on the day of the accident, the ridge-filled ice had covered the entire parking area for two days. R.R. at 588a.

Two other AT & T employees testified similarly that nothing ever was done when there was ice and snow on the parking lots. Robert Leonard complained to Dan Thomas about the condition of the parking area and testified that he never recalled seeing any evidence of snow removal at the building. Judy Kimbrugh recalled having to hold onto cars to transverse the lots. She testified that there never was a clear path to use to get to her car after there was snow or ice, and she had complained to her supervisors at AT & T about the situation.

Sandra Weiland, supervisor for AT & T administrative services at the time, testified that when complaints were made by employees relating to maintenance, a member of her group would call Radice and convey the substance of the complaint. She confirmed that *all* parking lots servicing the building were

generally ice covered, slippery, and hazardous during and after sub-freezing precipitation. She stated specifically that "generally all of the parking area was the same." Supplemental reproduced record at 23b.

Thomas, Radice's employee, acknowledged receipt of a number of complaints about the condition of the parking lots. These complaints were that the parking lots were not cleaned, were not salted, and were dangerous. He also acknowledged that the complaints were justified and that Radice was responsible for contacting Colosimo when maintenance was required.

The evidence relating to Mr. Urban's fall was as follows. It snowed the first week of December, 1984. Colosimo contended that it plowed the snow on December 5, 1984, and salted the lots on December 6, 1984. On Thursday, December 6, 1984, however, the witnesses for Mr. Urban testified that the parking lots were all extremely hazardous since it snowed both December 5, 1984, and again that day. The snow had compacted into an icy, rough surface. No effort to clean the lots was made on December 6, and when Mr. Urban arrived at work on Friday, December 7, 1984, the parking lot was worse since the ice was covered with an additional light snow. When he left work that evening, traffic was very congested and cars were slipping on the icy lots. Mr. Urban noticed that there was no indication that any plowing or salting had occurred on the lots and that the ice had formed into ruts and ridges. There was no area cleared for pedestrian traffic and no way for him to get to his car without walking across the ice-covered parking lot. He fell and hit his head while attempting to reach his car. He was unconscious temporarily and now suffers permanent brain damage.

Richard Mancini, a forensic meteorologist, testified that the first significant snowfalls for the winter of 1984 were on December 5 and December 6. The snow started with flurries at 7:00 p.m. on December 5 and by midnight, 2.5 inches of snow was reported. An additional 1.5 inches fell between midnight and 7:00 a.m. on December 6. Snow flurries continued through the day and the temperature remained below

freezing. Between 3:00 and 4:00 p.m. on December 6, 1984, there was an additional accumulation of .8 inches of snow fall.

Mr. Mancini stated that if Colosimo had plowed the lot on December 5, as claimed, and then salted on the morning of December 6, as his invoice indicates, the condition of the lot would have been as follows at the time of Mr. Urban's fall. There would have been uneven areas of snow and frozen slush that would have been very slippery. Since there would have been pedestrian or vehicular traffic over the area, the snow would be packed down to anywhere from one inch to one and one-half inches into a wavy surface unsafe for pedestrian traffic. Based on this evidence, the jury returned a verdict in favor of Mr. Urban and determined that Radice was ninety percent negligent and that Colosimo was ten percent negligent.

I agree with the majority's cogent analysis of the first two issues presented in this appeal. There was sufficient evidence of hills and ridges to sustain the jury's assessment of liability. Further, Mr. Urban's evidence established that he did not have a safe path to travel to his car over the parking area, and therefore there was no evidence to warrant a jury instruction on assumption of the risk.

My departure with the majority comes with its conclusion that the evidence of the prior fall requires grant of a new trial. The testimony produced at trial supports the inference that *whenever* subfreezing precipitation occurred, the condition of the *entire* parking lot generally was the same: unmaintained, dangerous, icy, and snowy. This was applicable to the handicapped area where Robert Leonard fell as well as the area where Mr. Urban parked. The fact that the area where Mr. Leonard fell was slightly cleaner at times due to sun exposure vitiates Radice's position on this issue, not Mr. Urban's position. Significant also to my analysis is the fact that the snow caused Mr. Leonard's fall. My review of the case law leads me to conclude that as long as a prior accident occurred under similar conditions, it is properly presented to the jury. Only where the plaintiff cannot establish that the cause of the prior

accident was the same as the cause of the plaintiff's accident should the evidence of the prior accident be prohibited.

The law as to this issue is established. Evidence of prior accidents are admissible to prove the existence of a dangerous condition if the accident occurred at the same place and under the same **or similar** conditions. *McCarthy v. Ference,* 358 Pa. 485, 58 A.2d 49 (1948). *Rogers v. Johnson & Johnson Products, Inc.,* 401 Pa.Super. 430, 585 A.2d 1004 (1990). *Vernon v. Stash,* 367 Pa.Super. 36, 532 A.2d 441 (1987). A trial court has wide latitude in determining whether evidence of prior accidents or occurrences should be admitted into evidence. *Lynch v. McStome & Lincoln Plaza Ass'n,* 378 Pa.Super. 430, 548 A.2d 1276 (1988). Further, if there are differences and similarities between the two accidents, the trial court has the discretion to determine if the similarities outweighed the differences.

I believe that *McCarthy, Rogers,* and *Vernon* compel our affirmance of the trial court's decision in this matter. In *McCarthy,* the Pennsylvania Supreme Court ruled admissible evidence about a landslide prior to the landslide that caused the accident at issue. The Court concluded that it was not significant that the prior landslide occurred on a different portion of the landowner's property because it was established that the condition along the stretch of land was similar. Thus, under the reasoning of *McCarthy,* the fact that Mr. Leonard fell on a different portion of the parking area cannot be determinative since the evidence clearly was that the entire parking area generally was in the same condition following a snowfall.

In *Rogers,* we held that evidence that a product was involved in burning other consumers was admitted properly where the plaintiff established that the product involved in the prior accidents was manufactured at the same time in the same plant. We concluded that the fact that different batches of the product were involved did not impact on the admissibility of the evidence, since the trial court reasonably could have concluded that the similarities in the accidents outweighed the differences for the purpose of establishing that the defendant

should have had notice of the condition of its product. Similarly, in *Vernon*, we upheld the trial court's admission of evidence that there were previous problems with a transmission in an allegedly defective truck where the transmission was responsible for the accident that caused the plaintiff's injuries.

Thus, it is where the plaintiff cannot establish that the cause of the prior accident was the same as the cause of his accident that such evidence is ruled inadmissible. In *Whitman v. Riddell*, 324 Pa.Super. 177, 471 A.2d 521 (1984), for example, we held that evidence that numerous other accidents occurred at a controlled intersection was admitted improperly into evidence because the plaintiff failed to establish that those accidents were caused by the same traffic signal timing problem that caused his accident.

Applying the same reasoning in *Lynch v. McStome & Lincoln Plaza Ass'n, supra,* we held that the fact that other people fell when elevators stopped abruptly was not admissible where there was no evidence that the defendant had manufactured the other elevators and no evidence regarding the causes of the incidents. *Also compare Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. 611, 537 A.2d 334 (1988), where the plaintiff failed to substantiate that prior accidents were similar to his or the circumstances under which the accidents occurred.

In the present case, there was sufficient evidence from which the trial court could have concluded that the prior accident occurred under sufficiently similar conditions to have warranted its admission into evidence. It occurred at the same place and under similar conditions, and the fall was caused by the same condition that caused Mr. Urban's fall. As I cannot conclude that the trial court abused the wide latitude accorded it on the admission of evidence, I would not grant Radice and Colosimo a new trial on this basis.

I also must disagree strongly with the majority's conclusion that the condition of the lots at times other that December 7, 1984, was irrelevant. Liability in this case was premised upon the condition of the landowner's property and the landowner's

knowledge of it. The facts that this parking area never was maintained following snowfalls and that Radice was aware of this were directly relevant to its negligence since it established Radice's notice and knowledge that the lots were not being maintained properly. Radice attempted at trial to shift responsibility for this accident to Colosimo, which was contractually obligated to keep the area free of snow. This made the evidence even more relevant as the prior complaints established both Radice's knowledge that Colosimo was not fulfilling its obligation and Radice's failure to correct the situation. I conclude the evidence was highly relevant to the issue of Radice's notice of the condition of their parking area after snowfalls and whether they discharged their duty as landowners to their invitees properly. *See Mitchell v. Borough of Rochester*, 395 Pa. 373, 150 A.2d 338 (1959); *Fritzky v. City of Pittsburgh*, 340 Pa. 217, 16 A.2d 422 (1940). Evidence is relevant if it tends to establish a fact at issue or advances the inquiry. I believe highly relevant the fact that Radice let this lot remain unattended after snowfalls despite repeated, warranted complaints. This evidence impacted directly on the issue of whether it was negligent.

As I find the other issues raised on appeal to be without merit, I would affirm the judgment.