Terry <strong>HICKS</strong> and Cindy Hicks,<br/>
his wife, Appellants,

v.

**METROPOLITAN EDISON CO., a subsidiary of General Public Utilities; Commonwealth of Pennsylvania, Department of Transportation; Asplundh Tree Expert Co.; A.B. Chance Co.; General Electric Co.; Andrea Pierce.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1995.<br/>
Decided Sept. 6, 1995.

Edward J. Coyle, for appellants.

Susan F. Evans, for appellees.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

DOYLE, Judge.

Terry and Cindy Hicks, husband and wife, appeal from an order of the Court of Common Pleas of Lebanon County which sustained the preliminary objections of Asplundh Tree Expert Company (Asplundh) and dismissed Count IV and Count V of the Hicks' second amended complaint.

The facts as alleged in the Hicks' complaint are as follows. On October 29, 1989, a vehicle driven by Andrea Pierce collided with a utility pole near the intersection of Schoolhouse Road, Ridge Road and Cedar Road in Conewago Township. As a result of the collision, the pole was sheared into two pieces and the top piece fell to the ground along with the electrical wires which it supported. Shortly thereafter, Terry Hicks arrived at the scene and exited his vehicle in order to provide assistance to the victims of the accident. While rendering assistance, Terry Hicks came into contact with an electrical wire or other objects through which electrical current was running and as a result suffered severe and permanent injuries.

On September 4, 1992, the Hicks filed a complaint against Metropolitan Edison Corporation (Met Ed), Andrea Pierce, Asplundh, and the Department of Transportation.[1] In Count IV of their complaint, the Hicks alleged that Asplundh had entered into an agreement with Met Ed whereby Asplundh would examine and inspect utility poles, on behalf of Met Ed in the south central region of Pennsylvania, including the utility pole involved in the accident. The Hicks further alleged that Asplundh was negligent in carrying out its duty of inspection and examination and that the Hicks' injuries resulted therefrom. The Hicks subsequently filed an amended complaint and on March 10, 1993, filed a second amended complaint which included an allegation in Count V that Terry

---

1. The action was instituted on October 28, 1991, by a writ of summons issued against Met Ed, the Department of Transportation, Asplundh, McGraw Edison Company, Cooper Power Systems, A.B. Chance Company, Line Material Company of Pennsylvania, General Electric Company, Andrea Pierce, and Line Material Industries. Only Met Ed, Asplundh, the Department of Transportation, and Pierce, however, were named in the subsequent complaint. By order of the court of common pleas dated April 23, 1993, Cooper Power Systems and McGraw Edison Company were dropped, without prejudice, as parties to the action. By order of the court of common pleas dated July 20, 1993, the action against General Electric was dismissed with prejudice. *See also* note 2, *infra*.

Hicks was a third party beneficiary of the agreement between Asplundh and Met Ed.

Asplundh filed preliminary objections to the second amended complaint which were sustained by the trial court. The trial court found that Asplundh owed no duty of care to the Hicks under the circumstances alleged and that Asplundh's alleged negligence was not a proximate cause of Terry Hicks' injuries. The trial court also found that the Hicks were neither expressly intended beneficiaries of the contract between Met Ed and Asplundh nor beneficiaries intended by the circumstances. Based on these findings, the trial court dismissed Counts IV and V of the Hicks' second amended complaint. The Hicks now appeal to this Court.[2]

On appeal, the Hicks argue that the trial court erred in sustaining Asplundh's preliminary objections because (1) their complaint contains all of the elements necessary to plead a cause of action in negligence, and (2) the law does not require a contract to expressly provide that a party is an intended third party beneficiary to that contract.

Our scope of review of an order of a trial court sustaining preliminary objections in the nature of a demurrer is limited to a determination of whether there has been an error of law or an abuse of discretion. *Doe v. Township of Robinson*, 161 Pa.Commonwealth Ct. 604, 637 A.2d 764 (1994). When reviewing whether preliminary objections were properly sustained, we consider as true all well-pleaded allegations and material facts averred in the complaint, as well as all reasonable inferences therefrom. *Hawks v. Livermore*, 157 Pa.Commonwealth Ct. 243, 629 A.2d 270 (1993). We further recognize that preliminary objections should be sustained only in cases that are clear and free from doubt. *Wurth v. City of Philadelphia*, 136 Pa.Commonwealth Ct. 629, 584 A.2d 403 (1990).

Notwithstanding the strict standard which must be met for this Court to affirm a lower court's decision to sustain a party's preliminary objections, we believe that the Hicks

have failed to allege sufficient facts in Counts IV and V of their complaint to support a cause of action against Asplundh. Therefore, for the reasons enumerated below, we affirm the judgment of the court of common pleas.

## COUNT IV—Negligence

A. *The Hicks Have Failed to Adequately Allege a Duty Owed to Them By Asplundh.*

The basic elements of a cause of action founded on negligence are: (1) a duty, recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. *Rankin v. Southeastern Pennsylvania Transportation Authority*, 146 Pa.Commonwealth Ct. 429, 606 A.2d 536 (1992).

The **sole** allegation of Asplundh's duty of care under its contractual agreement with Met Ed, and hence its duty of care to the Hicks, is contained in paragraphs 63 and 64 of the Hicks' second amended complaint which states the following:

63. As of October 29, 1989, the strength and integrity of UTILITY POLE was not adequate to enable said pole to be utilized to safely support wires used for the transmission of electrical current.

64. [The Hicks] have been informed, believe and, therefore, aver that ASPLUNDH did not instruct or recommend to Met–Ed that said UTILITY POLE be replaced and/or repaired prior to October 29, 1989.

The Hicks argue that Asplundh had a duty to protect Terry Hicks, a bystander to the automobile accident, who voluntarily entered the scene to aid Pierce. Whether a duty exists in any given situation depends upon the relationship existing between the parties at a particular time. *Burman v. Golay and Company, Inc.*, 420 Pa.Superior Ct. 209, 616 A.2d 657 (1992), *petition for allowance of appeal denied*, 533 Pa. 648, 624

---

2. By an order of this Court dated March 10, 1994, Cooper Power Systems, McGraw Edison Company, Line Material Company of Pennsylvania, and Line Material Industries were totally dismissed as parties to the action.

A.2d 108 (1993). Where the parties are strangers to each other, however, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions. *Alumni Assoc., Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan*, 369 Pa.Superior Ct. 596, 535 A.2d 1095 (1987), *aff'd*, 524 Pa. 356, 572 A.2d 1209 (1990).

■ However, the scope of this duty is limited; it is not the law of Pennsylvania that a party owes a duty of care to every individual with whom that party may randomly come into contact. Rather, to the extent that there is any duty at all, it is only a duty not to expose others to risks which are reasonably foreseeable. *Braxton v. Department of Transportation*, 160 Pa.Commonwealth Ct. 32, 634 A.2d 1150 (1993), *petition for allowance of appeal denied*, 539 Pa. 682, 652 A.2d 1326 (1994).

■ In *Zilka v. Sanctis Construction, Inc.*, 409 Pa. 396, 186 A.2d 897 (1962), *cert. denied*, 374 U.S. 850, 83 S.Ct. 1915, 10 L.Ed.2d 1070 (1963), the plaintiff was standing on his property observing a bulldozer, operated by an employee of the defendant, engaged in highway construction work along the edge of his property. The bulldozer unexpectedly hit a small tree, causing a piece of the tree to fly through the air and strike the plaintiff who was standing thirty to thirty-five feet away. The Supreme Court held that the defendant's conduct was not negligent in respect to the plaintiff since "it could not have been foreseen that there was any likelihood of harm to [the plaintiff], *i.e.*, he was not within the 'orbit of danger', from this operation of the bulldozer." *Id.* at 405, 186 A.2d at 901. While the defendant's behavior theoretically increased the risk of harm to the members of society at large, the law simply does not impose a duty to foresee each and every possible risk to each and every individual member of the public at large. *See id.; Dahlstrom v. Shrum*, 368 Pa.

423, 84 A.2d 289 (1951) (motorist owed no duty of care to injured pedestrian who, while standing behind a parked bus, was struck by body of deceased who was fatally injured by motorist while crossing highway).

Similarly, in *Burman*, the plaintiff was watching an apartment fire allegedly caused by the negligent electrical maintenance of the utility company. She was injured when she was struck with flying debris. The trial court granted summary judgment in favor of the utility, and the Superior Court affirmed. The Superior Court held that the utility owed no duty of care to the plaintiff and could not be found negligent in its relationship to a "voluntary spectator[ ] at an obviously dangerous scene." *Id.* at 214, 616 A.2d at 659.

Applying this reasoning to the present case, no reasonable person could conclude that Asplundh, by simply failing to report an alleged defect in a utility pole, should have foreseen an increased risk of harm to *bystanders* if a speeding car broke the pole in two and caused the electrical wires to fall to the ground.[3] To hold otherwise would effectively expand the concept of duty of care beyond acceptable limits.

B. *The Hicks Have Failed to Allege that Asplundh's Failure to Inspect and Report the Defective Nature of the Pole was the Proximate Cause of Hicks' Injury.*

■ Further, **even if** Asplundh owed some duty of care to Terry Hicks, its arguably negligent inspection of the pole was not the proximate cause of Hicks' injury; rather, the demolition of the pole by Pierce's car and Hicks' own actions were the cause of his injury.

■ The Supreme Court has adopted the definition of proximate cause set forth in the Restatement (Second) of Torts[4] § 431 (1965):[5]

---

3. What the Hicks alleged in their complaint was that the "strength and integrity of [the] UTILITY POLE [*itself*] was not adequate to enable said pole to ... safely support [the] wires." (Hicks' Second Amended Complaint at par. 63.)

4. Hereinafter referred to as the "Restatement."

5. *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977); *see also Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 465 A.2d 1231 (1983).

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a *substantial factor* in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm. (Emphasis added.)

Factors which are important in determining whether conduct is a substantial factor in bringing about harm are:

(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

(b) whether the actor's conduct has created a force or series of forces which are in *continuous* and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;

(c) lapse of time.

Restatement § 433 ("Considerations Important in Determining Whether Negligent Conduct is Substantial Factor in Producing Harm"); *see also Vattimo* (adopting Section 433 of the Restatement).

Using these criteria, Asplundh's conduct was too remote to reasonably be considered a substantial factor in causing the injury to Terry Hicks. First, there were several other events which caused Hicks' injury, most notable of which was Pierce shattering the utility pole with her car. Second, Asplundh's failure to inspect and report any defects in the pole, if there were any, was its *only* contractual duty to Met Ed, and its alleged failure to do so did not create a force that was continuous, because it was *Met Ed's* duty to maintain and replace the pole if it was too weak for the purpose for which it was intended, namely, safely suspending electrical wires.

An even more compelling reason for holding that Asplundh's conduct was not a substantial factor in causing Hicks' injury is found in Section 432 of the Restatement which provides in part that:

[T]he actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.

Comment (b) is pertinent here:

The statement in this Subsection is most frequently, although not exclusively, applicable where the actor's tortious conduct consists in a failure to take some precautions which are required for the protection of another's person or land or chattels. In such case, if the same harm, both in character and extent, would have been sustained even had the actor taken the required precautions, his failure to do so is not even a perceptible factor in bringing it about and cannot be a substantial factor in producing it.

*See also Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978).

An illustration from the Restatement, identical to the facts in this case except in one very critical aspect, is instructive:

The A Telephone Company negligently allows its telephone pole, adjoining the public sidewalk but several feet from the street, to become riddled with termites, thus creating the risk that the pole will fall or be knocked over and so injure some person using the sidewalk. An automobile negligently driven by B at excessive speed leaves the highway, comes up on the sidewalk, and knocks the pole over. It falls [upon] C, a pedestrian on the sidewalk, and injures him. A is subject to liability to C.

Section 442 B of the Restatement, illus. (b)(3). As indicated, liability in the illustration *is limited to the telephone company*, in the present case, Met Ed. Applying the principle of the Restatement's example further, however, Asplundh, whose involvement is more remote than Met Ed's in the course of events here, would be too far removed from the situation to be reasonably held liable. Asplundh was under no obligation to make the pole safe or to replace it; it merely had an obligation to inspect and report. The inspection was to determine whether the pole *could safely support electrical equipment*, not whether it could withstand the full impact of an out-of-control automobile. Whether the pole had been *inspected* or not, it was

the Pierce *car* which sheared the top portion off, causing the electrical wires to fall on the ground where Hicks came into contact with them. Asplundh's alleged negligence in failing to inspect the pole, therefore, was merely an incidental factor in bringing about the harm to the Hicks.

Furthermore, **even if** Asplundh's negligence was a substantial factor, the undisputed fact is that the utility pole **was** adequate to support the electrical wires. That pole did not collapse because it was termite ridden or otherwise decayed; it was sheared in half because of the impact of Pierce's automobile, an unexpected intervening force. *Grainy v. Campbell,* 493 Pa. 88, 425 A.2d 379 (1981) (following Section 447 of the Restatement wherein intervening negligence terminates liability for antecedent negligence where the first actor could not have realized that the second actor might so act, or the second actor's conduct was not a normal consequence of the situation created by the first actor). In terms of negligence law, this event was an intervening superseding cause. And, it is the established law in Pennsylvania that an intervening superseding cause "prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement § 440; *see also Grainy.*

### COUNT V—Hicks as a Third Party Beneficiary

The Hicks additionally argue that Terry Hicks was a third party beneficiary to the contract between Asplundh and Met Ed. Although the Hicks admit that neither Terry Hicks nor his wife were expressly named as third party beneficiaries in the contract, they maintain that we should nonetheless find that they were in fact intended beneficiaries under the circumstances. However, we do not believe that prior case law supports the Hicks' position, and must reject the Hicks' request to be given third party beneficiary status, thereby affirming the dismissal of Count V of the second amended complaint.

In *Scarpitti v. Weborg,* 530 Pa. 366, 372–73, 609 A.2d 147, 150–51 (1992), our Supreme Court considered the ways in which a party may become a third party beneficiary to a contract as follows:

Accordingly, we hold that a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, ... *unless* the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (Emphasis in original.) (Citations omitted.)

While it is true that a third party beneficiary need not be expressly named in the contract so long as the circumstances indicate that the contracting parties intend to confer a benefit upon a third party, the Hicks would have us expand this concept to include virtually every member of the public. We do not believe that parties ordinarily intend to confer such benefits upon the public at large or assume such massive potential liability when they enter into a contract. We do not believe Asplundh is any different in this regard and the Hicks have not alleged any facts in their complaint which would alter our view. Therefore, we believe it would be unwarranted to expand the parameters for those entitled to third party beneficiary status beyond the limits currently recognized in this Commonwealth by conferring such status upon the Hicks.

In *Scarpitti* the plaintiffs were lot owners of a subdivision who sued the subdivision architect for failing to uniformly enforce certain deed restrictions. They argued that the development company, from whom they purchased the lots, had an agreement with Weborg, the architect, to review all construction plans within the development. Weborg had approved construction which violated the deed restrictions, thereby breaching the agreement. The plaintiffs argued that, as lot owners, they were intended beneficiaries of that agreement, even though they were not explicitly identified. The Supreme Court agreed:

[I]t is patently clear that the parties, by establishing a vehicle for the enforcement of deed restrictions, intended to benefit the homeowners who purchased lots in the Winchester South Subdivision, at the time the contract was entered into. Although not individually named, appellee homeowners were *part of a limited class of persons* intended to benefit from the agreement between appellant and Winchester, thus satisfying ... subsection (b) of § 302 Restatement (Second) of Contracts (1979) [which provides that circumstances may "indicate that the promisee intends to give the beneficiary the benefit of the promised performance."]

*Id.* at 373–74, 609 A.2d at 151 (emphasis added). The court did not envision circumstances that would encompass the public at large, but circumstances that suggest a specific limited group of people. *See also Holmes v. Lankenau Hospital,* 426 Pa.Superior Ct. 452, 627 A.2d 763 (1993), *petition for allowance of appeal denied,* 538 Pa. 671, 649 A.2d 673 (1994) (even if the parties intended their contract to benefit the "whole world," it is questionable that such a broadly defined class of persons or entities would qualify for third party status). The circumstances alleged in this case are unlike those in *Scarpitti* and cannot possibly permit the inclusion of Hicks as an intended beneficiary of an agreement between Asplundh and Met Ed to inspect and report the existence of unsafe utility poles.

Finally, *Scarpitti* explicitly states that the determination of whether the recognition of third party status is appropriate is within the discretion of the trial court; it is an issue of law, not a question of fact to be submitted to the jury. In the present case, Hicks was not differently situated towards Asplundh and Met Ed than any other member of the general public. Therefore, we do not believe that the trial court abused its discretion by denying Hicks third party beneficiary status and

finding that there were no "circumstances [that were] so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties...." *Id.* at 373, 609 A.2d at 150.

Accordingly, we affirm the decision of the Court of Common Pleas of Lebanon County.

### ORDER

NOW, September 6, 1995, the order of the Court of Common Pleas of Lebanon County in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, dissenting.

Because I do not believe that the present case is clear and free from doubt, I would not sustain preliminary objections.[1] Accordingly, I respectfully dissent.

In Count IV of their complaint, the Hicks made the following allegations, which this court must accept as true:[2] (1) Asplundh inspected the utility pole in 1987, (O.R., Amended Complaint, para. 60); (2) Asplundh performed other inspections at other times, (O.R., Amended Complaint, para. 61); (3) at the time of the accident, October 29, 1989, the utility pole was defective in that the pole had been damaged and the wood of the pole had begun to decay and/or rot, (O.R., Amended Complaint, para. 62); (4) the strength and integrity of the utility pole had become inadequate to safely support wires used for the transmission of electrical current, (O.R., Amended Complaint, para. 63); and (5) Asplundh did not instruct or recommend to Met Ed that the utility pole should be replaced and/or repaired prior to October 29, 1989, (O.R., Amended Complaint, para. 64). The Hicks further alleged that Asplundh had a duty of care to Terry Hicks and other members of the public with respect to the utility pole which was located near the public roadway. The Hicks argue that through this complaint, they have properly

---

1. Preliminary objections should be sustained only in cases that are clear and free from doubt. *Wurth v. City of Philadelphia,* 136 Pa.Commonwealth Ct. 629, 584 A.2d 403 (1990).

2. When deciding whether preliminary objections were properly sustained, we consider as true all

well-pleaded allegations and material facts averred in the complaint, as well as all reasonable inferences therefrom. *Hawks v. Livermore,* 157 Pa.Commonwealth Ct. 243, 629 A.2d 270 (1993).

pleaded a cause of action in negligence against Asplundh. I would agree.

The basic elements of a cause of action founded on negligence are: (1) a duty, recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. *Rankin v. Southeastern Pennsylvania Transportation Authority*, 146 Pa.Commonwealth Ct. 429, 606 A.2d 536 (1992).

Duty, in any given situation, is predicated upon the relationship existing between the parties at a particular time. *Burman v. Golay & Co.*, 420 Pa.Superior Ct. 209, 616 A.2d 657 (1992), *petition for allowance of appeal denied*, 533 Pa. 648, 624 A.2d 108 (1993). Where the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions. *Alumni Assoc., Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan*, 369 Pa.Superior Ct. 596, 535 A.2d 1095 (1987), *aff'd* 524 Pa. 356, 572 A.2d 1209 (1990). The scope of this duty is limited, however, to those risks which are reasonably foreseeable by the act in the circumstances of the case. *Id.*

The trial court found and the Majority agrees that Asplundh could not have reasonably foreseen Terry Hicks' injuries, concluding that a reasonable person could not foresee the probability that a passer-by, uninvolved in an accident, would arrive upon a static accident scene and be harmed by the downed electrical wires. However, I note that the peculiar way in which an injury may result is not material to a finding of foreseeability, so long as there was a foreseeable probability of injury to one within the ambit of danger. *Masciangelo v. Dolente*, 222 Pa.Superior Ct. 368, 295 A.2d 98 (1972) (plaintiff was struck by a part of a tree which came up from the ground as he was operating a bulldozer on property which defendants had obligated themselves to clear of trees).

Thus, here, the Hicks allege that Asplundh had a duty to inspect the utility pole to make sure that it could safely support electrical wires. The Hicks also allege that Asplundh inspected the utility pole and, even though the utility pole had rotted to the extent that it could not safely support electrical wires, Asplundh did not recommend that the Department of Transportation (DOT) repair or replace it. I believe that the risk to the public from a decayed utility pole which cannot safely support electrical wires is reasonably foreseeable, and a jury might agree. *See Noon v. Knavel*, 234 Pa.Superior Ct. 198, 339 A.2d 545 (1975) (Known as "the hazard problem," it is for the jury to decide whether conduct tends to create an unreasonable risk of harm to others.).

The Majority also agreed with the trial court's determination that Asplundh's alleged negligence was not a proximate cause of Terry Hicks' injuries because even if Asplundh was negligent in inspecting the utility pole or reporting defects to Met Ed, these acts were too remote, and many other more substantial factors contributed to Terry Hicks' injuries. Whether a party's conduct has been a substantial factor in causing injury to another is ordinarily a question for the jury, and may be removed from the jury's consideration only where it is so clear that reasonable minds cannot differ on the issue. *Vernon v. Stash*, 367 Pa.Superior Ct. 36, 532 A.2d 441 (1987).

I do not believe that this is a case where the alleged negligence is so remote from the injury to Terry Hicks that the issue of proximate causation should be decided as a matter of law. A jury could determine that Asplundh's alleged negligence was a substantial factor in Terry Hicks' injuries. Indeed, the Hicks allege that the utility pole broke from the impact of the Pierce car because it had rotted. Moreover, the Hicks allege that because of the rotting, the utility pole could not safely support the electrical wires.[3] If As-

---

3. I note that the Majority errs in stating: "the undisputed fact is that the utility pole **was** adequate to support the electrical wires." (Majority op. at 535.) The Hicks specifically allege that the utility pole could not safely support the electrical wires, (O.R., Amended Complaint, para. 63), and this court must accept that well-pleaded fact as true.

plundh had properly performed its duty and recommended that DOT repair or replace the utility pole, and DOT had done so, the utility pole might have withstood the impact of Pierce's car and, thus, the wires which ultimately electrocuted Terry Hicks would not have fallen. Such a scenario, based on well-pleaded allegations, is for the jury to consider after the presentation of evidence at trial.

Because reasonable minds could differ on the issues of duty and proximate causation, I would conclude that the trial court erred in sustaining Asplundh's preliminary objections to Count IV of the Hicks' complaint.

Furthermore, with regard to Count V of the Hicks' complaint, alleging that Hicks was a third party beneficiary to a contract between Med Ed and Asplundh, the trial court and the Majority would decide as a matter of law that the Hicks were neither expressly intended beneficiaries of the contract nor beneficiaries intended by the circumstances. I cannot agree.

In *Scarpitti v. Weborg*, 530 Pa. 366, 372–73, 609 A.2d 147, 150–51 (1992), our Supreme Court considered the ways in which a party may become a third party beneficiary to a contract and held:

> Accordingly, we hold that a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, ... *unless* the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promises to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (Emphasis in original, citations omitted.)

In its preliminary objections to Count V, Asplundh stated:

> 17. In order for a non-contracting party, not in privity with the parties to the agreement, to recover on a theory of liability based upon negligent breach of a contract, the plaintiff must plead and prove that he or she was an intended third party benefi-

ciary to the contract and that such intention is clearly expressed on the face of the contract. Because plaintiffs failed to allege that the contract clearly indicates the intention of the parties thereto do [sic] make plaintiffs third party beneficiaries, defendant, Asplundh, is entitled to judgment as a matter of law.

Clearly, this is contrary to the law as above stated, and, thus, I believe the trial court erred in accepting it and ignoring the alternative test under *Scarpitti*, that the circumstances could be so compelling that the right to relief should be recognized and that the circumstances here indicate that Asplundh intended to give this third party beneficiary, and the public at large, the benefit of the promised performance.

Moreover, to hold as a matter of law that the Hicks were neither expressly intended beneficiaries of the contract between Met Ed and Asplundh nor beneficiaries intended by the circumstances is premature prior to trial.

For these reasons, I would reverse the order of the trial court and remand the case for further proceedings.

