997 A.2d 1152

Frederick S. and Lynn SUMMERS, H/W, Appellees

v.

CERTAINTEED CORPORATION and Union
Carbide Corporation, Appellants.

Richard Nybeck, Appellee

v.

Union Carbide Corporation, Appellant.

Frederick S. and Lynn Summers, H/W, Appellants

v.

Certainteed Corporation and Union Carbide
Corporation, Appellees.

Richard Nybeck, Appellant

v.

Union Carbide Corporation, Appellee.

Nos. 19 EAP 2006, 20 EAP 2006, 21 EAP 2006, 22 EAP 2006.

Supreme Court of Pennsylvania.

Argued April 17, 2007.

Resubmitted May 1, 2009.

Decided July 21, 2010.

298

Peter J. Neeson, Rawle & Henderson, LLP, Philadelphia, for Allied Signal Inc. in No. 19 EAP 2006.

Robert B. Lawler, Stephen M. Fitzgerald, Daniela Lellis de Carvalho, Wilbraham, Lawler & Buba, P.C., Philadelphia, for Certainteed Corp. and Union Carbide Corp. in No. 19 EAP 2006.

Daniela Lellis de Carvalho, Wilbraham, Lawler & Buba, P.C., Robert N. Spinelli, Catherine Nancy Jasons, Kelley, Jasons, McGowan, Spinelli & Hanna, L.L.P., Philadelphia, for Union Carbide Corp. in No. 20 EAP 2006.

Richard P. Myers, Robert E. Paul, Paul, Reich & Myers, P.C., Philadelphia, for Richard Nybeck in Nos. 20 EAP 2006 and 22 EAP 2006.

Peter J. Neeson, Carl D. Buchholz, III, Rawle & Henderson, L.L.P., Philadelphia, for Allied Signal Inc. in Nos. 19 EAP 2006 and 21 EAP 2006.

Louis M. Tarasi Jr., Tarasi & Tarasi, P.C., Pittsburgh, for Amicus Curiae Pennsylvania Trial Lawyers Association.

Richard P. Myers, Robert E. Paul, Paul, Reich & Myers, P.C., Philadelphia, for Frederick S. and Lynn Summers in Nos. 19 EAP 2006 and 21 EAP 2006.

William J. Smith, Dickie, McCamey & Chilcote, P.C., William Rudolph Adams, for John Crane, Inc. f/k/a Crane Packing in Nos. 20 EAP 2006 and 22 EAP 2006.

Robert B. Lawler, Daniela Lellis de Carvalho, Wilbraham, Lawler & Buba, P.C., Philadelphia, for Union Carbide Corp. and Certainteed in No. 21 EAP 2006.

Daniela Lellis de Carvalho, Wilbraham, Lawler & Buba, P.C., Robert N. Spinelli, Catherine Nancy Jasons, Kelley, Jasons, McGowan Spinelli & Hanna, L.L.P., Philadelphia, for Union Carbide Corporation c/o CT Corporation in No. 22 EAP 2006.

Michael Lee Martinez, Crowell & Moring, L.L.P., for Amicus Curiae Coalition of Litigation Justice, Inc.

James Michael Beck, Dechert LLP, Philadelphia, for Amicus Curiae Product Liability Advisory Council, Inc.

Kenneth M. Argentieri, David G. Klaber, K&L Gates, L.L.P., Pittsburgh, Bruce H. Bikin, Rebecca F. Kraut, Philadelphia, Montgomery, McCracken, Walker & Rhoads, L.L.P., for Amicus Curiae The BOC Group, et al.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.[1]

Appellants, Frederick Summers and Richard Nybeck, appeal the Superior Court's *per curiam* order, which affirmed the trial court's grant of summary judgment to Appellees, Union Carbide Corporation, Certainteed Corporation, and Allied Signal, Inc.[2] After careful consideration, we reverse the Superior Court's order affirming the trial court, and remand this action to that court for proceedings consistent with this opinion.

### I.

This appeal comes to us via strict liability, asbestos litigation commenced by Frederick Summers (and his wife, Lynn) and Richard Nybeck (collectively, Appellants). Appellants filed separate actions in the Philadelphia County Court of Common Pleas in 2001, seeking damages related to each man's exposure to asbestos during various employments. After many named defendants, by either stipulation or court order, were dismissed from the cases, Appellees filed motions for summary judgment in the respective actions, which the trial court

1. This matter was reassigned to this author.

2. Two Appellee briefs were filed with this Court concerning this appeal. The first was a joint brief filed by Appellees Certainteed Corporation and Union Carbide Corporation; while any arguments by Certainteed relate only to the *Nybeck* appeal, Union Carbide remains a party for both cases. The other brief was filed by Allied Signal, Inc., which is only party to the *Summers* appeal. With that said, however, all of the arguments presented by all of the Appellees mirror one another, and thus, unless otherwise noted, will be referred to within this opinion collectively as presented on behalf of "Appellees."

granted. Appellants filed separate notices of appeal, and two separate panels of the Superior Court entertained oral arguments. Following oral arguments and the issuance of a panel decision in the *Nybeck* case, the Superior Court consolidated the two appeals, and listed them for oral argument before the court *en banc*. The court then divided evenly, 4–4, affirming the trial court's order granting summary judgment.[3] *Summers v. Certainteed Corp.*, 886 A.2d 240 (Pa.Super.2005) (*en banc* ). We granted allowance of appeal to determine whether the Superior Court misapplied the precedent of this Court in affirming the order granting summary judgment. As proper disposition of the instant appeals is based partly upon each Appellant's individual health conditions, our analysis commences by addressing each in turn.

## A. Frederick Summers

In 1959 and 1960, Mr. Summers worked as a saw operator at an asbestos manufacturing plant. With his daily cutting and sawing of asbestos material came the unavoidable consequence of constant inhalation of asbestos dust. After leaving employ at the plant, Mr. Summers further encountered asbestos through subsequent careers at the Southeastern Pennsylvania Transit Authority and as an independent heating and plumbing contractor.

In 1999, Mr. Summers sought treatment for his breathing difficulties. By 2003, Mr. Summers' condition had become so debilitating that he was forced to retire. Since retirement, Mr. Summers has been unable to enjoy many of life's activities, such as fishing, jogging, or flying in airplanes, due to extreme shortness of breath. Indeed, Mr. Summers cannot climb one-half of a flight of stairs without losing his breath.

**3.** Prior to oral arguments, former Judge Michael Joyce recused himself *sua sponte*, thus leaving an eight-member court. Upon issuance of the Superior Court Opinion, four members voted to affirm the trial court's grant of summary judgment to defendants, while four others voted to reverse. Accordingly, the Superior Court issued a *per curiam* order affirming the trial court's grant of summary judgment, with Judges Klein and Panella filing opinions in support of affirmance and reversal, respectively. These opinions will be examined in greater detail, *infra*, Part I.C.

In 2003, after several medical examinations, which revealed the presence of pleural thickening, Dr. Jonathan L. Gelfand diagnosed Mr. Summers with asbestos pleural disease related to his years of asbestos exposure. Dr. Gelfand concluded that the disease was a substantial factor in his reduced lung diffusion[4] and extreme shortness of breath. Contemporaneous with this diagnosis, however, Dr. Gelfand further opined that Mr. Summers suffered from obstructive lung disease contributable to a forty pack-year history of smoking cigarettes.[5] Although Mr. Summers ceased smoking over thirty years ago, Dr. Gelfand opined that Mr. Summers' breathing difficulties could also be attributed to his past smoking. Finally, Mr. Summers' prior medical history was notable for a spontaneously collapsed lung in the 1960s, asthma, removal of his gallbladder, and surgery for an ulcer.

Notwithstanding the diagnostic complexities, as noted, Dr. Gelfand concluded, to a reasonable degree of medical certainty, that the asbestos-related pleural disease was a substantial factor in Mr. Summers' diffused lung condition and debilitating shortness of breath. In so finding, Dr. Gelfand noted that, while the obstructive lung condition due to smoking showed "some improvement," in general, the reduction in lung diffusion remained severe. *See* Report of Dr. Gelfand concerning Frederick Summers, Reproduced Record (R.R.) at 45a. Accordingly, Dr. Gelfand opined that, while occupational exposure to asbestos dust substantially contributed to his condition, *id.* at 46a, the obstructive lung disease, caused by cigarette smoking, also played a role in his breathlessness.

## B. Richard Nybeck

While Mr. Nybeck was enlisted in the Navy in the 1950s, 1960s, and 1970s, he was exposed to asbestos dust and fibers from materials used in boilers, automobile brakes, and steam

---

4. Lung diffusion, or pulmonary diffusion capacity, is a measure of the amount of oxygen that passes from the lungs into the blood stream.

5. A "pack-year" history is the number of packs of cigarettes smoked per day, multiplied by the number of years the person smoked. Thus, a person with a forty pack-year history may have smoked, for example, a pack-a-day for forty years or two packs-a-day for twenty years.

pipes. Mr. Nybeck, like Mr. Summers, was forced into premature retirement due to debilitating shortness of breath, and can no longer enjoy life's activities, such as fishing, or even walking on level ground, without becoming short of breath. His condition has worsened, and his limitations have increased, over the past decade.

Dr. Gelfand, also Mr. Nybeck's treating physician, diagnosed Mr. Nybeck with asbestos-related pleural thickening and the more severe disease of asbestosis. Mr. Nybeck also smoked cigarettes until approximately ten years ago, and thus suffers from severe obstructive lung disease related to an eighty pack-year history of smoking. Again, however, notwithstanding the case's complexities, Dr. Gelfand was able to conclude to a reasonable degree of medical certainty that occupational exposure to asbestos fibers and dust over the years caused Mr. Nybeck's pleural disease and asbestosis, which are significant contributing factors to his debilitating condition. *See* Report of Dr. Gelfand concerning Richard Nybeck, R.R. at 183a.

## C. Procedural History

As noted, Appellants initially filed separate products liability actions against a number of defendants, some common to the two actions, others not. The defendants in each case filed motions for summary judgment; and, relevant to this appeal, argued that neither Appellant could survive summary judgment because their respective smoking-related diseases prevented them from proving that exposure to asbestos was the cause of their debilitating conditions.

Although the cases had not been formally consolidated, the trial court, entering one order and supporting opinion, granted the defendants' motions for summary judgment and dismissed Appellants' cases.[6] In support of its order, the trial court

6. Pursuant to Pa. R.C.P. No. 1041.1(f), "[A] motion for summary judgment filed by one defendant [in an asbestos-related litigation] alleging a ground common to one or more other defendants shall be deemed filed on behalf of all such defendants." Instantly, and consistent with Rule 1041.1(f), Appellees filed their motions for summary judgment on behalf of all named and remaining defendants in each

cited to the Superior Court's 2003 decision in *Quate v. American Standard, Inc.*, 818 A.2d 510 (Pa.Super.2003), which states as follows:

> where a plaintiff suffers from a non-asbestos-related medical condition, the symptoms of which are consistent with medical conditions arising from exposure to asbestos, the existence of those non-asbestos-related medical conditions negate his ability to establish the necessary causal link between his symptoms and asbestos exposure. Under these circumstances, summary judgment is proper.

*Id.* at 511. Thus, because both Mr. Summers and Mr. Nybeck suffer from lung diseases associated with both asbestos-related and non-asbestos-related conditions, the trial court found it "impossible ... to causally relate [Appellants'] shortness of breath to any particular medical condition ...." Tr. Ct. Slip Op. at 4 (Dec. 29, 2003) (citing *Quate* ).

Appellants filed separate appeals to the Superior Court, and, as noted, the cases were eventually consolidated for oral argument before the court *en banc.* The eight-member court split 4–4, resulting in the affirmance of the trial court's order granting summary judgment. Judge Klein authored the Opinion in Support of Affirmance (OISA),[7] specifically affirming the *Quate* panel's reasoning concerning issues of causation in asbestos-related litigation. Relying on *Quate,* as well as the trial court's experience in asbestos litigation,[8] the OISA determined the trial court did not abuse its discretion; rather, in light of Appellant's significant history of smoking and other medical conditions, the OISA found that "neither of [Appellants] can currently meet his burden of demonstrating that

litigation. Accordingly, this appeal concerns all named defendants involved in both cases.

7. Judges Hudock and Gantman joined the OISA; then Judge, now Justice, Orie Melvin concurred in the result only.

8. The Honorable Norman C. Ackerman was the trial judge. At the commencement of the instant litigations, Judge Ackerman was the calendar-control judge for the Philadelphia Center for Complex Litigation, and thus directly supervised all asbestos cases filed in Philadelphia County. *See Summers,* 886 A.2d at 242 n. 2.

asbestos exposure created impairment or disability ...."
*Summers,* 886 A.2d at 246–47.

The OISA further discredited Dr. Gelfand's expert reports, which, while cataloging the numerous medical problems from which Appellants suffered, still concluded, to a reasonable degree of medical certainty, that Appellants: (1) suffered from an asbestos-related disease, which was (2) a cause of the debilitating breathing conditions, and (3) substantially contributed to by "each and every exposure to asbestos." *Id.* at 244 (quoting Reports of Dr. Gelfand, R.R. at 46a, 183a). In rejecting these conclusions, the OISA, in conformity with *Quate,* opined, "just because a hired expert makes a legal conclusion does not mean that a trial judge has to adopt it if it is not supported by the record and is devoid of common sense." *Id.* With that, the OISA concluded that Appellants' numerous medical ailments made it impossible to relate their shortness of breath causally to any particular medical condition, despite the diagnoses of asbestos-related pleural disease (Summers) and asbestosis (Nybeck). *Id.* at 246.

Judge Panella authored the Opinion in Support of Reversal (OISR).[9] The OISR first noted that, over recent years, the Superior Court has espoused differing standards for establishment of a *prima facie* case in asbestos-related litigation. *See Cauthorn v. Owens Corning Fiberglas Corp.,* 840 A.2d 1028 (Pa.Super.2004) (outlining the competing standards for establishment of a *prima facie* case).[10] The OISR then opined that Appellants, through Dr. Gelfand's reports and conclusions concerning their respective conditions, had established *prima facie* cases capable of surviving summary judgment motions, under each of the inconsistent tests established in Superior Court caselaw. Specifically, the OISR found that Dr. Gelfand had, to a reasonable degree of medical certainty, concluded that Appellants were exposed to asbestos, suffered from asbestos-related conditions, and that those conditions were fac-

9. Then Judge, now President Judge, Ford Elliott, and Judges Bender and Bowes joined Judge Panella's OISR.

10. These differences, and the applicability of such to this case, will be explained in greater detail *infra,* Part III.B.

tual causes of the debilitating breathlessness from which each man suffers. Thus, the OISR would have reversed the trial court's grant of summary judgment, and permitted a jury to decide the issues.

Appellants and Appellees both filed for allowance of appeal, which we granted to consider three issues: (1) whether the Superior Court used an improper standard in reviewing the trial court's order granting summary judgment; (2) to clarify whether plaintiffs, in pursuing asbestos-related causes of action, are precluded from recovery whenever breathlessness or like ailments may be attributable to both the asbestos and non-asbestos related disease(s) from which a plaintiff suffers; and (3) whether the OISA improperly failed to consider this Court's decision in *Martin v. Owens–Corning Fiberglas Corp.,* 515 Pa. 377, 528 A.2d 947 (1987). While we conclude that the Superior Court's OISA did not err in declining to rely upon *Martin,* we conclude that the court, in the first instance, erred in its application of the standard of review for examination of a grant of summary judgment, and ultimately, that a plaintiff should survive a motion for summary judgment whenever reasonably certain expert opinions are proffered attributing a plaintiff's maladies to both an asbestos and non-asbestos relat-ed disease. Accordingly, on those two grounds, we reverse.

## II.

Appellants begin their argument by contending that the Superior Court applied the wrong standard and scope of review when analyzing the trial court's orders granting sum-mary judgment. Specifically, they aver that the OISA im-properly applied an abuse of discretion standard, rather than conducting plenary review of the trial court's decision and, by doing so, did not view the evidence of record in a light most favorable to them, as the non-moving parties. In other words, Appellants essentially argue that the trial court erred by failing to view the facts in a light most favorable to Appellants, and, by adopting an abuse of discretion standard in reviewing the trial court's decision, the OISA accepted the trial court's faulty findings, compounding the error. Appellants assert that if this Court conducts a *de novo* review, properly viewing

the facts, it will be clear that summary judgment should have been denied. While Appellees dispute any error on the part of the lower courts, they primarily contend that Appellants waived this challenge by stating, in their brief to the Superior Court, that the standard of review is whether there was an abuse of discretion or error of law.

As has been oft declared by this Court, "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218, 1221 (2002); Pa. R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. *Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 195 (2007). In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment "where the right to such judgment is clear and free from all doubt." *Id.* On appellate review, then,

> an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals.

*Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 926 A.2d 899, 902–03 (2007) (internal citations omitted). To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. *Id.* at 903.

With these standards in mind, we agree with Appellants that the OISA seemingly, and improperly, deferred to the trial court's resolution of the legal question of whether genuine issues of material fact existed. Moreover, on no less

than four occasions in the opinion, the OISA reiterated that it could not discern any abuse of discretion on the trial court's part in granting summary judgment. *See Summers,* 886 A.2d 240, 243, 246. While clear that the OISA reviewed the entire record ("we do not believe that [the trial court] has abused [its] discretion but instead believe [it] made a reasoned judgment based on [its] evaluation of the *entire* record"), *id.* (emphasis in original), simply employing the correct scope of review is not sufficient. Appellate courts must also utilize the proper standards of review as well.[11] Here, the OISA does not even mention that the proper resolution of questions of law requires *de novo* review. Accordingly, we find that the OISA erred in using an "abuse of discretion" standard of review.[12] [13]

### III.

Unlike the members of the Superior Court who joined the OISA affirmance of the grants of summary judgment, we view

11. As has been noted many times by this Court, scope and standard of review are two very distinct terms of art, which carry different meanings and usages. *Morrison v. Dep't of Pub. Welfare,* 538 Pa. 122, 646 A.2d 565, 570 (1994). " 'Scope of review' refers to the confines within which an appellate court must conduct its examination. In other words, it refers to the matters (or "what") the appellate court is permitted to examine. In contrast, 'standard of review' refers to the manner in which (or "how") that examination is conducted." *Id.* (internal citations and quotations omitted).

12. We further reject Appellees' claim that Appellants waived review of this issue. As noted by Appellee Allied Signal in its principal brief to this Court, Appellants "included the 'error of law/abuse of discretion' standard of review in the 'Standard and Scope of Review' section of the Appellants' Substituted Brief on Reargument filed in the Superior Court." Brief of Allied Signal at 15 n.11. As has now been discussed, Appellants correctly stated the proper standard of review for summary judgment in general, and, in so doing, mentioned that summary judgment review encompasses errors of law. Accordingly, we discern no waiver on Appellants' part.

13. While the error committed by the OISA in this regard may well be sufficient grounds to vacate the *per curiam* order of the Superior Court and remand this case to the Superior Court for review anew, such review would be conducted in accord with the *Quate* standard, rejected *infra,* necessitating another appeal and reversal. Accordingly, as a matter of judicial economy, we proceed to decide the other issues here presented.

the remainder of these appeals as concerning three additional issues: one of both law and fact, and two pure questions of law. Specifically, the mixed issue of law. and fact revolves around the trial court's and OISA's review of the record and of Dr. Gelfand's conclusions and diagnoses in general, and whether the record supports the trial court's decision that Appellants failed to establish causation as a matter of law. The legal issues concern: (1) whether Messrs. Summers and Nybeck suffered from asbestos-related, compensable injuries under this Court's jurisprudence; and (2) whether the fact that each man smoked cigarettes precludes their cases from surviving a motion for summary judgment on the issue of causation. In deciding the appropriateness of Appellants' litigation under these issues, we must keep in mind a paramount function of juries under Pennsylvania law: the resolution of conflicting facts and theories of causation.

### A.

The Superior Court OISA concluded that Dr. Gelfand's opinions were factually and legally insufficient to establish the causes of Appellants' conditions. *Summers*, 886 A.2d at 244. Specifically, Dr. Gelfand concluded,

> In my opinion, to a reasonable degree of medical certainty, exposure to asbestos in the workplace is the cause of the asbestos pleural disease and is a substantial contributing factor to this diffusion abnormality and to his dyspnea on exertion. Each and every exposure to asbestos has been a substantial contributing factor to the abnormalities noted.

*Id.*

It has long been Pennsylvania law that, while conclusions recorded by experts may be disputed, the credibility and weight attributed to those conclusions are not proper considerations at summary judgment; rather, such determinations reside in the sole province of the trier of fact, here, a jury. *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 664 A.2d 525, 528 (1995); *In re Estate of Hunter*, 416 Pa. 127, 205 A.2d 97, 102 (1964) ("The credibility of witnesses, professional or

lay, and the weight to be given to their testimony is strictly within the proper province of the trier of fact."). Accordingly, trial judges are required "to pay deference to the conclusions of those who are in the best position to evaluate the merits of scientific theory and technique when ruling on the admissibility of scientific proof." *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1045 (2003) (*citing Frye v. United States*, 293 F. 1013 (D.C.Cir.1923)).

▆ At the summary judgment stage, a trial court is required to take all facts of record, and all reasonable inferences therefrom, in a light most favorable to the non-moving party. *Toy*, 928 A.2d at 195. This clearly includes all expert testimony and reports submitted by the non-moving party or provided during discovery; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot *sua sponte* assail them in an order and opinion granting summary judgment. Contrarily, the trial judge must defer to those conclusions, *see Grady; Frye*, and should those conclusions be disputed, resolution of that dispute must be left to the trier of fact. *Miller*, 664 A.2d at 528.

▆ Instantly, the OISA overlooked Dr. Gelfand's testimony that Appellants each suffered from debilitating conditions related to occupational exposure to asbestos and focused almost exclusively on the statement that "each and every exposure to asbestos has been a substantial contributing factor to the abnormalities noted." *Id.; see also* R.R. at 46a, 183a.[14] In our view, Dr. Gelfand testified to a diagnosis or medical conclusion supported by the record: both Appellants had

14. In *Gregg v. V–J Auto Parts, Co.*, 596 Pa. 274, 943 A.2d 216 (2007), this Court recently rejected the viability of the "each and every exposure" or "any breath" theory. We stated:

we do not believe that it is a viable solution to indulge in a fiction that each and every exposure to asbestos, no matter how minimal in relation to other exposures, implicates a fact issue concerning substantial-factor causation ... The result, in our view, is to subject defendants to full joint-and-several liability for injuries and fatalities in the absence of any reasonably developed scientific reasoning that would support the conclusion that the product sold by the defendant was a substantial factor in causing the harm.

*Id.* at 226–27.

already demonstrated prolonged and intense occupational exposure to asbestos, and such exposure was not disputed. Moreover, their medical histories and examinations each showed evidence of asbestos-related diseases, including pleural thickening. Whether pleural thickening was the proximate cause for Appellants' symptoms was a disputed issue that should have been reserved for the jury rather than decided by the court on summary judgment. Accordingly, it was error for the courts below to reject these conclusions at the summary judgment stage.

### B.

The question of the adequacy of Dr. Gelfand's conclusions now examined, we move to what we view as the two separate legal issues that surround not just the instant litigation, but also the scores of asbestos-related cases that continue to daunt the courts of this Commonwealth.

The first, discussed in this part, is whether Appellants, in the first instance, suffered from a compensable injury under our jurisprudence. Prior to 1996, a plaintiff possessed a viable cause of action against asbestos manufacturers upon a mere diagnosis of an asbestos-related condition. *See e.g. Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992). That changed, however, when this Court held that diagnosed, but asymptomatic, asbestos-related pleural thickening failed to state a cognizable cause of action. *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232, 237 (1996).[15] Accordingly, only upon the development of symptoms and physiological impairment could a plaintiff commence litigation for an asbestos-related injury. *Id.* In determining what actually constituted "symptoms and physiological impairment," we noted that "when the pleural thickening is asymptomatic, individuals are able to lead active, normal lives, with no pain or

**15.** *Simmons* affirmed *sub nom. Giffear v. Johns–Manville Corporation*, 429 Pa.Super. 327, 632 A.2d 880 (1993) (*en banc*). Relevant to this appeal, the holding of the Superior Court in *Giffear* was the same as this Court in *Simmons:* asymptomatic pleural thickening does not constitute a compensable injury.

suffering, no loss of an organ function, and no disfigurement due to scarring." *Id.* at 236. It is thus unassailable that the converse is equally true: when pleural thickening becomes symptomatic, and individuals are no longer able to lead normal lives, *Simmons* is satisfied and a viable cause of action exists, as a plaintiff is then, in the legal sense, harmed.

Even before our pronouncement in *Simmons,* however, confusion began to mount in light of different panels of the Superior Court espousing inconsistent views concerning what are, and are not, compensable symptoms and physiological impairments. In 1995, a panel of the Superior Court held that shortness of breath alone was non-compensable when unaccompanied by physical symptoms, functional impairments, or disabilities. *Taylor v. Owens–Corning Fiberglas Corp.,* 446 Pa.Super. 174, 666 A.2d 681, 687–88 (1995) (citing *Giffear, supra* note 15). The same panel, in a separate case argued the same day, then permitted litigation to continue when the asbestos-related breathlessness prohibited life activities such as walking, climbing stairs, or driving nails with a hammer. *White v. Owens–Corning Fiberglas Corp.,* 447 Pa.Super. 5, 668 A.2d 136, 139–40 (1995). Inconsistent with *Taylor* and *White,* however, a different panel of the Superior Court, two years later, found a *prima facie* showing sufficient to undergird recovery when a plaintiff merely established (1) an asbestos-related condition; (2) shortness of breath; and (3) a causal connection between the two. *McCauley v. Owens–Corning Fiberglas Corp.,* 715 A.2d 1125 (Pa.Super.1998).

As noted above, an integral part of the analysis of this case is whether Appellants, in the first instance, even suffer from a compensable injury under *Simmons* and its progeny. To that end, we agree with the OISR below that, under either the *Taylor/White* standard, or the *McCauley* three-part structure, Appellants instantly have clearly demonstrated a compensable injury. *See Summers,* 886 A.2d at 248 (OISR) ("I express no opinion on whether [the *Taylor/White* ] standard or the less stringent standard [of *McCauley* ] requiring only shortness of

breath is the proper standard, as I conclude that the plaintiffs in the present cases have satisfied both.").[16]

 An analysis under the *Taylor/White* test is simple: both men clearly suffer from "physical symptoms" and "functional impairments." They have been forced into retirement, cannot walk short distances without becoming short of breath, nor can they enjoy fishing. Likewise, under *McCauley*, each man suffers from shortness of breath, has been diagnosed with an asbestos-related condition, and their shortness of breath, at least in part, has been causally linked to asbestos exposure. Accordingly, under *Simmons* and its (contradictory) progeny, Appellants suffer from compensable injuries.

### C.

The answer to the first legal issue concerning the establishment of a cause of action under Pennsylvania law now ascertained, we turn to the second legal issue in this case: whether, regardless of the compensability of their injuries, Appellants have no viable cause of action because the cause of their symptoms may be attributed to either their asbestos-related or the non-asbestos related conditions. In resolving this issue against Appellants, the trial court and the Superior Court OISA extensively relied upon the Superior Court's panel decision in *Quate v. American Standard, Inc.*, 818 A.2d 510 (Pa.Super.2003), for the proposition that Appellants' cigarette smoking and obstructive lung diseases "may have caused [their] shortness of breath upon exertion and therefore [the

16. Indeed, *amicus curiae* Coalition for Litigation Justice, Inc., realized that, with this case: "this Court has an important opportunity to clarify the standard required to establish an action for damages" under Pennsylvania law. Brief for the Coalition of Litigation Justice, Inc. as *Amicus Curiae* in Support of Appellees at 33. Moreover, the Dissent questions whether, under *Taylor* (but without any citation to either *White* or *McCauley* ), shortness of breath alone is a compensable injury. *See* Dissenting Op. at 324–25, 997 A.2d at 1070–71 (Eakin, J., dissenting). While we agree that, at some point, we must rectify the confusion resulting from the Superior Court's conflicting *prima facie* standards, this case is not the proper vehicle to do so, as Appellants have demonstrated a compensable injury under either standard. Thus, any adop-

medical conditions] cannot be causally related to asbestos exposure sufficient to sustain a compensable injury." Tr. Ct. Slip Op. at 4; "Neither of the plaintiffs can currently meet his burden of demonstrating that asbestos exposure created impairment or disability beyond the severe breathing problems he has from smoking and other ailments." *Summers v. Certainteed Corp.*, 886 A.2d at 246–47 (OISA).

As noted, *supra* Part II, "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218, 1221–22 (2002). Equally clear is that

> [w]hether in a particular case that standard [plaintiff's burden of preponderance of the evidence] has been met with respect to the element of causation is normally a question of fact for the jury; the question is to be removed from the jury's consideration *only where it is clear that reasonable minds could not differ on the issue. In establishing a Prima [sic] facie case, the plaintiff need not exclude every possible explanation* [. . .]; it is enough that reasonable minds are able to conclude that the preponderance of the evidence shows defendant's conduct to have been a substantial cause of the harm to plaintiff.

*Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1284–85 (Pa.1978) (emphasis added); *see also Vattimo v. Lower Bucks Hosp., Inc.*, 502 Pa. 241, 465 A.2d 1231, 1234 (1983) (holding, where reasonable minds may differ, questions of causation are for the jury); *Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 180 A.2d 414, 419 (1962) (holding where "reasonable difference of opinion as to whether the defendant's act was the, or a proximate cause of, the injury, the matter is for the jury to decide"); *Finney v. G.C. Murphy, Co.*, 406 Pa. 555, 178 A.2d 719 (1962) (holding issues of fact in dispute are solely for the jury); *Anderson v. Bushong Pontiac Co.*, 404 Pa. 382, 171 A.2d 771 (1961) (holding proximate cause almost always a question solely for the jury); *Jones v. Port Auth. of Allegheny County*, 136 Pa.Cmwlth. 445, 583 A.2d 512 (1990) (holding that

tion of a uniform test or *prima facie* standard at this juncture would be *dicta*.

questions of proximate cause are within the exclusive domain for the jury and may only be removed when reasonable minds cannot differ); *Dep't of Pub. Welfare v. Hickey*, 136 Pa. Cmwlth. 223, 582 A.2d 734 (1990) (same); *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525 (1988) (same, quoting *Hamil* ); *Vernon v. Stash*, 367 Pa.Super. 36, 532 A.2d 441 (1987) (same); Restatement (Second) Torts § 434(2).

In *Quate*, expert testimony revealed that the plaintiff suffered from both asbestosis and shortness of breath after having been exposed to asbestos, but also presented with an extensive medical history, which included complications due to smoking, diabetes, prostate cancer, and heart disease. *Quate*, 818 A.2d at 512–513. Mr. Quate's shortness of breath, however, did not restrict his daily activities, nor prevent normal functioning. *Id.* at 514. Rather than concentrating on Mr. Quate's condition being asymptomatic in nature,[17] the Superior Court panel instead decided that Mr. Quate's myriad of medical conditions, all of which may cause shortness of breath, precluded Mr. Quate from establishing the necessary causal connection between the breathlessness and asbestosis to survive a motion for summary judgment:

> we hold that where a plaintiff suffers from a non-asbestos-related medical condition, the symptoms of which are consistent with medical conditions arising from exposure to asbestos, the existence of those non-asbestos-related medical conditions negate his ability to establish the necessary causal link between his symptoms and asbestos exposure. Under these circumstances, summary judgment is proper.

*Id.* at 511.

In applying *Quate* to the instant cases, the courts below dismissed Dr. Gelfand's conclusions, made to a reasonable degree of medical certainty, that Appellants each suffer from debilitating conditions caused at least in part by occupational exposure to asbestos, and instead focused on Appellants' other medical conditions (specifically, obstructive lung disease

17. To be sure, had the *Quate* panel denied recovery on this basis, such a holding would have been wholly consistent with this Court's decision in *Simmons, supra* pp. 1161–62.

due to smoking) as being dispositive of their claims. In the context of negligence actions, we have held unequivocally that "the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence." *Hamil,* 392 A.2d at 1285. While asbestos litigation implicates concepts of strict liability rather than negligence, the requirements of proving substantial-factor causation remain the same. *Harsh v. Petroll,* 584 Pa. 606, 887 A.2d 209, 214 n. 9 (2005); *see also Spino v. John S. Tilley Ladder Co.,* 548 Pa. 286, 696 A.2d 1169, 1172 (1997) ("Pennsylvania law requires that a plaintiff prove two elements in a products liability action: that the product was defective, and that the defect was the substantial factor in causing the injury.").[18] Under this Commonwealth's jurisprudence, where it is clear that reasonable minds could differ on the issue of causation, precluding asbestos litigants from pursuing causes of action, supported by competent medical evidence, merely because of the existence of competing health conditions, is unsustainable. *Accord Vattimo,* 465 A.2d at 1234. To that end, the *Quate* analysis defies the scores of cases decided over the decades by the appellate courts of this Commonwealth holding that disputed issues of causation are for the jury and the jury alone. Accordingly, after careful consideration, to the extent *Quate* states or holds otherwise, it is explicitly disapproved.

Turning, then, specifically to this appeal from the grant of summary judgment, the holdings of the courts below cannot withstand the aforementioned jurisprudence. While, certainly, portions of the record support Appellees' contentions that a non-asbestos related condition is the root of Appellants' debili-

18. Indeed, we now instruct juries on the very idea of competing issues of factual causation. *See* Pa.SSJI (Civ) § 3.15 ("The defendant's conduct need not be the only factual cause. The fact that some other causes concur ... does not relieve the defendant of liability ...."); § 8.04B (instructing that, in a strict products liability action, when a defendant manufacturer proffers a different factual cause of the sustained injury, "the manufacturer has the burden of proving by a fair preponderance ... that the plaintiff's injuries are divisible and [the defective product] did not contribute to this particular injury.")

tating conditions, the same record also readily supports Dr. Gelfand's conclusions concerning causation. The resolution of any conflict between competent, competing medical evidence, under clear precedent, must be left for a jury.[19] At least absent further proceedings, wherein the competence of proffered medical testimony might be challenged,[20] in reviewing the record and all reasonable inferences therefrom in a light most favorable to Appellants, we can discern no other viable conclusion than to reverse the grant of summary judgment.

Jurisdiction relinquished.[21]

19. We note that the Dissent places much emphasis on the fact that "each [A]ppellant has so many other conditions that finding the asbestos exposure to be a significant contributing factor is difficult even if Dr. Gelfand's ["each and every exposure"] theory were facially plausible." Dissenting Op. at 327, 997 A.2d at 1171 (Eakin, J., dissenting). The Dissent then goes on to detail the myriad of medical conditions plaguing Appellants, including asbestos-related diseases, and finds that "having an expert say the words 'sufficient to establish legal causation' is not enough" to survive summary judgment in these types of asbestos cases. *Id.* at 329, 997 A.2d at 1173. Respectfully, however, the Dissent arrives at such a conclusion without citation to or mention of the plethora of decisions from this Court that require juries to resolve competing theories of causation. We agree with the Dissent that Appellants' conditions related to years of cigarette smoking may be contributing to their debilitating conditions. What the Dissent ignores, however, is that Dr. Gelfand has opined, to a reasonable degree of medical certainty, that Appellants' incapacitating conditions have been caused, at least in part, by exposure to asbestos. With that opinion, our jurisprudence requires Appellants to have the opportunity to prove their cases before a jury.

As an aside, we are compelled to note further that the Dissent takes no issue with our disapproval of the *Quate* decision; indeed, had we reaffirmed the vitality of *Quate*, the Dissent's position would be well-taken. As noted *supra*, however, *Quate* simply cannot be aligned with the decisional law of this Court.

20. Again, we recognize that discovery in these cases may not be closed; there have been no requests for a *Frye* hearing; nor have motions *in limine* or an omnibus motion to exclude evidence been filed, litigated, or adjudicated by the trial court.

21. In light of this disposition, we need not address the third issue raised in this appeal, namely whether the OISA improperly disregarded our decision in *Martin v. Owens–Corning Fiberglas Corporation*, 515 Pa. 377, 528 A.2d 947 (1987). However, in light of our order to remand this case to the trial court, we note that Appellants' argument in this regard is without merit. Appellants contend that *Martin* "stands for the proposition that where two or more causes combine to produce a single result, incapable of reasonable division, each may be [a] substantial

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR, concurring.

I am sympathetic to the task of the common pleas and intermediate appellate courts in addressing the "elephantine mass of asbestos litigation ... [which] defies customary judicial administration and calls for national legislation." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 821, 119 S.Ct. 2295, 2302, 144 L.Ed.2d 715 (1999). Ultimately, however, I agree with the majority that the common pleas court's summary judgment decision, which turns on *Quate v. American Standard, Inc.*, 818 A.2d 510 (Pa.Super.2003), was not an adequate resolution of Appellants' claims in the present case.

Initially, I agree with the majority that *Quate* is unsound to the degree that it rejects, outright, the possibility of a valid differential diagnosis by a medical expert, and/or the potential for concurrent causation, in applying the injury threshold under *Simmons v. Pacor*, 543 Pa. 664, 674 A.2d 232 (1996). *See* Majority Opinion, at 314–15, 997 A.2d at 1164–65. While

factor in bringing about the loss. Where this is the case, each cause is charged with the whole of the harm." Brief of Appellants at 35. Such an averment, however, misstates the holding in *Martin*.

In *Martin*, the plaintiff sought asbestos-related damages and presented expert testimony, which detailed his disabilities due to both asbestosis and cigarette-smoking-related emphysema. The trial court, in charging the jury after summations, instructed the members to apportion the damages awarded (if any) by the percentage of Martin's condition that was due to cigarette smoking. On appeal, we remanded for a new trial, limited to the issue of damages, because the jury had not been provided any testimony or evidence concerning the relative contribution of cigarette smoking and asbestos exposure to the plaintiff's conditions. Despite Appellants' contentions to the contrary, *Martin* did not address the issues of expert testimony or causation discussed herein; rather, *Martin* merely concerned the propriety of a trial court's instruction to apportion damages in a concurrent causation action.

the common pleas court cannot be faulted for relying on *Quate* as prevailing Superior Court precedent, such reliance obviated an evaluative examination of Dr. Gelfand's methodologies, which I believe belongs—explicitly—at the center of these cases. *See, e.g., In re Asbestos Litigation,* No. 001 Oct. Term 1986, *slip op.,* 2008 WL 4600385 (C.P.Phila.Sept.24, 2008) (reflecting an evaluative assessment of the "any breath" theory, on a developed record, upon a defense challenge pursuant to *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923)); *In re Toxic Substances Cases,* No. A.D. 03–0319, 2006 WL 2404008, at \*3–4 (C.P.Allegh.Aug.17, 2006) (same), *rev'd on other grounds sub nom Betz v. Pneumo Abex LLC,* 9 A.2d 1134 (2010), *petition for allowance of appeal filed,* No. 278 WAL 2010.[1]

The difficulty in these cases, highlighted at length by Appellees and their *amici,* is that, at least on the face of his report, Dr. Gelfand's differential diagnosis is explained solely in terms of the "any breath" theory of causation. *See, e.g.,* Report of Jonathan L. Gelfand, M.D. (Summers), at 3 (June 25, 2003). Notably, in *Gregg v. V–J Auto Parts, Co.,* 596 Pa. 274, 943 A.2d 216 (2007), this Court recently credited the opinion announcing the judgment of the Superior Court in the present case, authored by Judge Klein, to the degree it rejected the "any breath" theory as establishing a jury issue in cases in which the plaintiffs' exposure to a defendant's asbestos-containing product is *de minimus. See id.* at 291, 943 A.2d at 226.[2]

The difference here arises from the fact that Appellants have surpassed the *de minimus* threshold, which was the

1. While Appellees credit the common pleas court with having assessed Dr. Gelfand's opinions overtly, *see* Brief for Appellee Allied Signal, Inc., at 18 ("The trial court determined that plaintiffs' medical evidence regarding causation, which consisted of one line in each of the reports of Dr. Gelfand, did not meet the threshold requirement of admissibility[.]"); Brief for Certainteed Corp. and Union Carbide Corp. at 18–19 & n.20 ("[T]he court acted well within its discretion when it evaluated plaintiffs' expert conclusions to determine their competency and reliability as evidence."), such assessment is, at the very best, implicit in the common pleas court's opinion.

2. Indeed, in several material respects, the present majority opinion resembles the dissenting ones from *Gregg.*

issue in *Gregg*. Thus, presently, the underlying questions are whether the "any breath" theory suffices to support a differential diagnosis and/or to establish concurrent causation, and whether there is some other undisclosed methodology or basis supporting Dr. Gelfand's opinions.[3] It is my considered position that, to the degree a plaintiff surpasses the *de minimus* threshold, such matters are best addressed via the procedure established under Civil Procedural Rule 207.1 (encaptioned, "Motion to Exclude Expert Testimony Which Relies upon Novel Scientific Evidence"). *Accord In re Asbestos Litigation*, No. 001 Oct. Term 1986, *slip op.*, 2008 WL 4600385; *In re Toxic Substances Cases*, No. A.D. 03–0319, 2006 WL 2404008, at *3–4.[4]

It may be that the common pleas court believed that an inquiry into the admissibility of Dr. Gelfand's opinion under *Frye* was not implicated, on the theory that the methodology employed was not novel. *See Commonwealth v. Puksar*, 597 Pa. 240, 255, 951 A.2d 267, 276 (2008) (explaining that the *Frye* test is limited to novel methodologies). However, as developed in my dissenting opinion in *Commonwealth v. Smith*, 606 Pa. 127, 995 A.2d 1143 (2010), I believe that Pennsylvania common pleas courts should maintain a meaningful screening role in determining the admissibility of evidence adduced from those laying claim to special expertise. Thus, I would interpret the term "novel," in the screening test to determine *Frye's* applicability, to subsume any scientific method which cannot be fully explained in terms of generally accepted scientific theory upon a close evaluation. *See Smith*, 606 Pa.

---

**3.** While the majority regards Dr. Gelfand's conclusions as "readily support[ed]" in the record, Majority Opinion, at 315, 997 A.2d at 1165, I do not see any other rationale supporting a differential diagnosis, other than the "any breath" theory.

**4.** While the effort of the common pleas court and the Superior Court to shortcut that process is understandable, I believe it has had the effect of weakening the offered justifications for summary judgment. Notably, it is precisely because the courts' opinions are based on an implicit evidentiary ruling (which, concededly, is made more explicit in the opinion authored by Judge Klein), that a question arises concerning the appropriate standard of review. *See* Majority Opinion, at 306–08, 997 A.2d at 1159–60. In this regard, there is no question that evidentiary

at 184, 995 A.2d at 1177 (Saylor, J., dissenting) (explaining that an unduly restrictive approach to *Frye* would allow speculative or manufactured conclusions to elude judicial screening solely because they are loosely couched within established scientific methodologies).[5]

Moreover, under our evidentiary rules not all proffered expert testimony must be admitted. Rule 702 indicates that such testimony should only be considered if it will "assist the trier of fact to understand the evidence or determine a fact in issue," Pa.R.E. 702, a question whose resolution is committed to the common pleas court, *see* Pa.R.E. 104. This Court has explained, moreover, that *Frye*, like the federal test under *Daubert*, is a means of "insuring that only reliable expert scientific evidence is admitted at trial." *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 557, 839 A.2d 1038, 1045 (2003). Although *Daubert* is understood as the more liberal standard in terms of admissibility, *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997), its purpose remains to guard against consideration by jurors of unreliable evidence disguised as scientifically-based expert opinion. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir.2005); *see also Commonwealth v. Topa*, 471 Pa. 223, 232, 369 A.2d 1277, 1282 (1977) (reflecting the concern that "scientific proof may in some instances assume a posture of mystic infallibility in the eyes of a jury of laymen"); *cf. E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 553 (Tex.1995) ("Professional expert witnesses are available to render an opinion on almost any theory, regardless of its merit.").

rulings are subject to the abuse-of-discretion standard applied in the Superior Court.

**5.** The *Smith* majority approved the admission of a scientific opinion which was contrary to the scientific literature upon which expert relied. *See Smith*, 606 Pa. at 155, 995 A.2d at 1159. Thus, the decision seems to lend support to an extremely liberal approach to the admissibility of scientific evidence in the courtroom.

Nevertheless, the *Smith* majority discussed several aspects of the expert's testimony in tandem, making it difficult to assess the breadth of the holding; the decision arose in the context of evaluating strategic, trial decisions of a criminal defense attorney; and the majority couched the relevant expert opinion as "questionable," as opposed to contrary to the scientific literature. *See Smith*, 606 Pa. at 155, 995 A.2d at 1159. For these reasons, I do not read *Smith* as having broad-scale significance in terms of this Court's approach to scientific evidence.

Thus, again, I would interpret *Frye* as subsuming all methodologies which reflect "novel" scientific evidence, including in the sense that such methods are not grounded in identifiable and generally accepted scientific principles. For example, a physician's pronouncement that the cause of an injury was a particular condition should not be insulated from judicial scrutiny purely because this is the type of things physicians say. Rather, it is a fair inquiry for courts to meaningfully consider whether the physician's specific *methodology for arriving at the conclusion* is supported by generally accepted scientific principles, as a prerequisite to admitting the opinion into evidence. For these reasons, I do not support as limited a perspective concerning our common pleas courts' screening function as the plaintiffs advocate here. *See* Brief for Appellants at 21, 28–29. Specifically, I do not find it satisfactory to default to a let-the-jury-decide approach to the admissibility of scientific evidence.[6]

As applied presently, it may be true, for the reasons expressed in the opinion authored by Judge Klein, that Dr. Gelfand lacked a reliable scientific foundation to conclude that asbestos exposure represented a substantial factor in causing plaintiffs' medical problems. *Accord In re Asbestos Litigation,* No. 001 Oct. Term 1986, *slip op.,* 2008 WL 4600385 (concluding, upon an evidentiary record under *Frye,* that "the claimed methodology [to support the any-breath theory] simply does not exist or is so convoluted and inherently contradictory so as to defy any comprehension"). Nevertheless, channeling an evidentiary challenge through the appropriate

---

**6.** As the Supreme Court of Texas has explained:

Expert witnesses can have an extremely prejudicial impact on the jury, in part because of the way in which the jury perceives a witness labeled as an expert. To the jury an "expert" is just an unbridled authority figure, and as such he or she is more believable. A witness who has been admitted by the trial court as an expert often appears inherently more credible to the jury than does a lay witness.... Added to the potentially prejudicial influence of the term expert is the difficulty inherent in evaluating scientific evidence. Jurors are often expected to understand complex testimony regarding arcane scientific concepts and are even asked to resolve issues on which the experts cannot agree.

*Robinson,* 923 S.W.2d at 553 (citations and quotation marks omitted).

procedure has the advantage of focusing the controversy and yielding overt evidentiary rulings which, where appropriate, will be made on a developed record. A salutary effect is to minimize the scope of the legitimate controversies on appeal, and, thereby, to increase the potential for consensus.

If that had been done here, the Superior Court, and this Court, might have had an adequate foundation to evaluate whether the trial court correctly determined that Dr. Gelfand's reports did not raise a genuine factual issue. As it is, the Superior Court plurality would place judges in the role of independent scientific experts, which, obviously, is not their central area of expertise. *See Summers v. Certainteed,* 886 A.2d 240, 243, 245 (Pa.Super.2005) (Opinion in Support of Affirmance); *see also supra* note 1.[7] The plurality opinion also depends, in material part, on the scientific conclusion that it simply is not possible for a medical expert to assess substantial-factor causation relative to a diffusion reduction. While this may well be true, I believe Appellants were entitled to be informed, prior to an appeal, that this was a central basis for the determination that they have no present remedy. This would have sharpened the controversy and assured that it was channeled through appropriate procedural avenues, with fair notice and opportunity for response and development to all. *Cf. In re Asbestos Litigation,* No. 001 Oct. Term 1986, *slip op.,* 2008 WL 4600385; *In re Toxic Substances Cases,* No. A.D. 03–0319, 2006 WL 2404008, at *3–4.

Accordingly, while recognizing the profound social impact of asbestos litigation, I support the remand directed by the majority to allow for appropriate process.[8] Since, however, I maintain respectful but material differences with the majori-

---

7. This would also raise a number of process concerns, as, for example, litigants are not permitted to *voir dire* the judge in terms of the relevant scientific qualifications.

8. Appellants argue that Appellees have waived their right to an evidentiary hearing, *see* Reply Brief for Appellants at 3–4; however, the argument is not well developed. In any event, waiver was not the basis for decision to this point, and the issue remains for the common pleas court to determine in the first instance.

ty's reasoning, my agreement with its opinion is limited to the result.

Justice EAKIN, dissenting.

I respectfully dissent.

Regarding the proper standard of review, the majority fails to address the fact that appellant Summers, in briefing the matter to the Superior Court, advanced an "abuse of discretion" standard of review. Appellant cannot now complain that the court applied the wrong standard if that was the standard he asked for. To complain of it now raises a new complaint, not addressed below, for reasons of appellant's own making. I cannot see the efficacy of granting relief because a party got what he asked for.

Further, although the Superior Court's Opinion in Support of Affirmance (OISA) did not explicitly set forth a *de novo* standard of review, it did review the record in its entirety, as well as the applicable case law, before affirming the trial court's grant of summary judgment. The majority's finding the OISA erred in using an abuse of discretion standard of review hinges on its perception the OISA "deferred to the trial court's resolution of the legal question of whether genuine issues of material fact existed." Majority Op., at 307, 997 A.2d at 1160. In contrast, I find the OISA merely relied on Superior Court precedent for the conclusion appellants could not meet their burden of demonstrating their asbestos exposure caused impairment or disability beyond breathlessness attributable to smoking and other non-asbestos related causes. *See Summers v. Certainteed Corporation,* 886 A.2d 240, 242–43 (Pa.Super.2005).

In *Giffear v. Johns–Manville Corporation,* 429 Pa.Super. 327, 632 A.2d 880 (1993), Giffear had asymptomatic asbestos-related pleural thickening.[1] *Giffear,* at 882. The trial court

---

1. In *Simmons v. Pacor,* 543 Pa. 664, 674 A.2d 232 (1996), we defined asbestos-related pleural thickening as follows:

 Asbestos-related pleural thickening has been defined as the formation of calcified tissue on the pleura, the membranes surrounding the lungs. The condition may be objectively determined in the sense that

granted the defendant's motion for judgment notwithstanding the verdict. *Id.*, at 883. The Superior Court affirmed, holding "as a matter of law, that pleural thickening, absent disabling consequences or manifest physical symptoms, is a non-compensable injury and is therefore not a cognizable claim in the Commonwealth." *Id.*, at 884. The court concluded, "[w]ithout evidence that such a condition is causing ascertainable physical symptoms, impairment, or disability, pleural thickening is a non-compensable injury and, therefore, does not give rise to a cause of action." *Id.*, at 888.

This Court affirmed *Giffear* in *Simmons*. In *Simmons*, we were asked to determine "whether asymptomatic pleural thickening, i.e., unaccompanied by disabling consequences or physical impairment, is a compensable injury." *Simmons*, at 236. This Court concluded "asymptomatic pleural thickening is not a compensable injury which gives rise to a cause of action." *Id.*, at 237. In reaching that conclusion, we noted no physical injuries had been established by the appellants. *Id.*

Between the time *Giffear* was decided and reviewed in *Simmons*, the Superior Court decided *Taylor v. Owens–Corning Fiberglas Corp.*, 446 Pa.Super. 174, 666 A.2d 681 (1995), which affirmed the trial court's grant of summary judgment in the defendants' favor as to three of the four consolidated plaintiffs. *Id.*, at 684. The court stated the three plaintiffs who were diagnosed with asymptomatic asbestosis-related disease had not suffered any discernible physical symptoms or functional impairment. *Id.*, at 684–85. The court explained:

Shortness of breath alone is not a compensable injury under *Giffear* ... because it is not a discernible physical symptom, a functional impairment, or a disability. It is common knowledge that breathlessness is also associated with any number of non-asbestos-related ailments including lung can-

it is revealed on an x-ray. Pleural thickening may occur independent of or in conjunction with asbestosis. When the pleural thickening is asymptomatic, individuals are able to lead active, normal lives, with no pain or suffering, no loss of an organ function, and no disfigurement due to scarring.
*Id.*, at 236 (citations omitted).

cer, excessive cigarette smoking, heart disease, obesity, asthma, emphysema and allergic reactions.

*Id.,* at 687 n. 2.

The condition the majority herein describes as compensable injury is "shortness of breath." Majority Op., at 315, 997 A.2d at 1164. Despite *Simmons,* let us assume this is a compensable injury; there is divided authority on that point, but the issue is not before us. Both appellants have shortness of breath, and both have Dr. Gelfand saying "each and every" exposure to asbestos was not just a factor, but a *substantial* contributing factor to that shortness of breath. Report of Dr. Gelfand Concerning Nybeck, 8/19/03, at 2; Report of Dr. Gelfand Concerning Summers, 6/25/03, at 3 (emphasis added). Based on that conclusory statement alone, must we send the case to the jury?

It is certainly true that further discovery or proceedings could discredit the doctor's "every breath is substantial" theory—then again, further proceedings might bolster that theory. We, however, review the trial court's decision on the record at the time of the motion. Neither position is substantiated at this point, and we cannot tell if support or destruction of the doctor's expansive theory may be forthcoming.

The true question is whether it is the burden of the proffering party, appellants here, to support that theory at this stage, or whether it is the burden of the defense to challenge the conclusion by means of a *Frye* hearing or the like. If a conclusion that forms the basis of liability is founded on a manifestly questionable causation theory,[2] does the trial court have the authority to grant summary judgment when there is no support of the theory in the record?

There are two reasons I would find the trial court's actions appropriate. First, the "every breath" theory is indeed suspect on its face. *See Summers,* at 244. Secondly, each

---

**2.** As amicus points out, there is considerable authority in the medical community rejecting the "every breath" theory; other courts have rejected this as well. *See* Brief of the BOC Group, *et al.,* at 10–13. There is apparent agreement that some threshold exposure is needed before exposure causes injury. *Id.,* at 10–11.

appellant has so many other conditions that finding the asbestos exposure to be a significant contributing factor is difficult even if Dr. Gelfand's theory were facially plausible.

Judge Klein's analogy to the bucket of water in the ocean is spot on. *See id.* Each exposure may contribute, but no single exposure can be substantial—by definition, "substantial" cannot modify every bucket of water in the ocean, and while each bucket counts, no bucket is substantial. Each and every exposure can be no more a *significant* contributing factor than is each and every cigarette, or each and every meal that led to the obesity.[3] That is, the medical conclusion offered is, on its face, not credible in terms of the legal notion of "substantial contributing factor." Each asbestos fiber, each cigarette, each cheeseburger is literally but a drop in the proverbial bucket—a bucket unquestionably full, but to call each drop substantial mocks the legal concept of that word. Common sense tells us the doctor simply overstated the matter. As such, I can find no error in rejecting the proffered opinion on its face.

Even ignoring this basic failing in the doctor's premise, was appellant's proffer sufficient for a jury to conclude the product was a "substantial contributing factor" to the injury alleged? The injury is shortness of breath, a condition each appellant undoubtedly has. The material facts are *not* at issue—appellant's best case is Dr. Gelfand's report. If it suffices, they prevail, and if it does not, they do not. The case *is,* therefore, appropriate for summary judgment.

According to Dr. Gelfand, Mr. Summers' exposure to asbestos was a significant contributing factor to diffusion abnormality and dyspnea on exertion, and was the cause of his pleural thickening. *See* Report of Dr. Gelfand Concerning Summers, 6/25/03, at 3. However, Mr. Summers also suffers from moderately severe chronic obstructive pulmonary disease (COPD) as well as emphysema, asthma, and obesity. *Id.,* at 2.

**3.** Dr. Gelfand's report indicated, among Mr. Summers' medical problems other than those from asbestos, that he was 5'8" tall and weighed 235 pounds. *See* Report of Dr. Gelfand Concerning Summers, 6/25/03, at 2.

The doctor opines that his 40 pack-year smoking caused the COPD and is a "substantial contributing factor" to the other conditions. *Id.*, at 3. He does not rule out his asthma, COPD, or obesity as possible causes of Mr. Summers' shortness of breath.

Mr. Nybeck has twice the smoking history of Mr. Summers and quit later. Report of Dr. Gelfand Concerning Nybeck, 8/19/03, at 1. He has severe emphysema, hyperinflation of the lungs, and a more intensive medical history. *See id.*, at 2; Deposition of Richard Nybeck, 10/16/03, at 402–04. Dr. Gelfand's conclusions for this appellant are couched in exactly the same terms as with Mr. Summers. Report of Dr. Gelfand Concerning Nybeck, 8/19/03, at 2. He does not rule out the emphysema, bronchitis, and pneumonia as other causes of Mr. Nybeck's shortness of breath. *See* Deposition of Richard Nybeck, 10/16/03, at 402–04.[4]

Thus, with Mr. Summers, Dr. Gelfand believes asbestos was the *cause* of pleural thickening, and was a *substantial contributing factor* to diffusion abnormality and dyspnea. He opines that smoking was the *cause* of Mr. Summers' chronic obstructive lung disease, and a *substantial contributing factor* to diffusion abnormality and dyspnea. He allows that either COPD, or asthma, or obesity could be the *cause* of his shortness of breath.

With Mr. Nybeck, the doctor again opines that asbestos exposure was the *cause* of pleural thickening and asbestosis, and was a *substantial contributing factor* to diffusion abnormality and dyspnea. Smoking was the *cause* of severe chronic lung disease, and a *substantial contributing factor* to pulmonary function abnormalities, hyperinflation, and dyspnea. He allows that the shortness of breath could also be *caused* by emphysema, bronchitis, or pneumonia.

In sum, asbestos *caused* pleural thickening, the non-compensable condition, while smoking *caused* the lung disease. He

4. Dr. Gelfand's report does not address the bronchitis or pneumonia.

opines both *contributed* to other problems but cannot rule out other *causes*. If the "compensable injury" is shortness of breath, or dyspnea on exertion, what caused it? If there are two significant contributing factors, the majority would be correct in allowing the fact-finder to assign *causation*. Where there are three legitimate potential causes, the significance of each lessens. Where there are five potential causes, the significance of each is necessarily diluted—it is still easy to call each "significant" but in a strict liability products case, mere speculation about actual causation cannot be overcome by saying every event every day is legally substantial.

Having an expert say the words "sufficient to establish legal causation" is not enough—the court has some obligation to examine the conclusions, not merely accept them as inviolate on their face. Where the expert's opinion cannot assign causation beyond stating the obvious—each party had a lot of problems for a lot of reasons, the opinion is of little help to a jury. Where the basis for the opinion itself is manifestly suspect, that "each and every" exposure is not just a factor but a substantial one, the opiner's credibility unravels.

The trial court did not reject the conclusion that appellants suffer from asbestos-related disease; in fact, that is not the conclusion Dr. Gelfand makes. What the court *did* do was find insufficient the proffered connection between the relevant symptoms and the amount of asbestos exposure that actually happened. With that conclusion, I cannot disagree and hence dissent.